IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNIVERSAL FURNITURE
INTERNATIONAL , INC.,

    Plaintiff,

v.

COLLEZIONE EUROPA USA, INC.,

    Defendant.

Case No.: 1:04CV00977



## DECLARATION OF STEPHEN GILES

1. My name is Stephen Giles. I am over eighteen (18) years of age, and I am competent to testify to the matters set forth in this Declaration. I submit this Declaration in support of Universal Furniture International, Inc.'s Motion for Preliminary Injunction. The matters stated herein are of my own personal knowledge, except for matters stated upon information and belief, as to which matters I have been informed by reliable sources and believe those matters to be true.

2. I am currently employed by Universal Furniture International, Inc. ("Universal") as Senior Vice President of Merchandising. My responsibilities include supervising the company's conception and development of new lines of furniture. I have held this position since September, 2001. I have 20 years of experience in the furniture industry, including 15 years' experience in product development.

3. Universal is a Delaware corporation with a principal place of business in High Point. North Carolina. Universal is a manufacturer, importer and wholesaler of fine home furnishings. Universal is known within the furniture industry for producing

furniture with highly distinctive designs that contain creative selections of skillfully crafted ornamental and decorative features.

4. Universal invests substantial resources, both in money and in time, in the creation and development of original new furniture designs. We contract with outside furniture design specialists, such as the well respected design firm Norman Hekler, Inc. ("Norman Hekler"), which is also based in High Point, NC, to help us produce new furniture designs that will be appealing to consumers. Compensating designers such as Norman Hekler for their work is a major expense to Universal. Universal typically and primarily compensates design firms such as Norman Hekler by paying royalties on Universal's sales of the designs they create. For the English Manor and Grand Inheritance collection designs, Universal has made royalty payments to Norman Hekler of approximately $ 940,000 to date.

5. In addition to the fees and royalties we pay outside design firms like Norman Hekler, Universal also invests substantially in highly specialized computer hardware and software to handle the production and transmission of computerized design drawings that are used during the design and manufacturing process. Universal Furniture also maintains an engineering and quality team in the US and China to assist in the development of new products.

6. These expenditures of resources by Universal constitute a major investment in design creativity. The creativity and originality of Universal's furniture designs is extremely valuable to Universal. If Universal's investment in design creativity is not protected, and other companies are able to use Universal's original designs for themselves without compensation, Universal will be unable to continue investing in such

designs, and ultimately Universal, its designers and the consuming public will suffer accordingly as original furniture designs disappear from the market.

7. Submitted as Universal Exhibit 1 are true and correct copies of photographs depicting Universal's Grand Inheritance collection, which has been offered for sale publicly since 2001.

8. Submitted as Universal Exhibit 6 is a copy of the Certificates of Registration that Universal received from the United States Copyright Office for the Grand Inheritance collection, with an effective date of registration of May 1, 2003, and an effective date of supplementary registration of July 3, 2003.

9. Submitted as Universal Exhibit 2 are true and correct copies of photographs depicting Universal's English Manor collection, which has been offered for sale publicly since 2002.

10. Submitted as Universal Exhibit 7 is a copy of the Certificate of Registration that Universal received from the United States Copyright Office for the English Manor collection, with an effective date of registration of November 14, 2003.

11. I am personally familiar with the details of the designs of both Grand Inheritance and English Manor.

12. I am familiar with a furniture manufacturing company known as Collezione Europa ("Collezione"), the defendant in this action. Collezione is a competitor of Universal. Collezione is known in the furniture industry for copying furniture styles and designs created by other companies, and then selling competing versions of those furniture lines at lower prices. Collezione has previously been found liable by this court for copyright infringement of another company's furniture designs.

13. In October of 2004, Universal learned that Collezione was displaying two furniture collections in its showroom that appeared to be very close copies, if not exact duplicates, of Universal's English Manor and Grand Inheritance collections.

14. I personally investigated the matter, visited the Collezione showroom, and took photographs of the furniture that was being displayed in the Collezione showroom. The photographs attached as Universal Exhibits 2.a. and 2.b. depict many of the items of furniture I saw in the Collezione showroom and confirm my personal observations set forth below.

15. When I observed the furniture in the Collezione showroom, it appeared to me, based on my personal familiarity with the details of Universal's English Manor collection, and the Lacquercraft (Universal's parent company) production stickers on the back of the furniture cases, that the furniture in Collezione's showroom that looked like Universal's English Manor collection actually was Universal's English Manor collection. In other words, rather than creating a design based on copying English Manor, Collezione obtained actual pieces of Universal's English Manor and displayed those pieces in its showroom as if it were Collezione furniture. I also noticed, and the photographs included within Universal Exhibit 2.a. also illustrate, a second furniture collection that, based upon my personal familiarity with Grand Inheritance, appeared strikingly similar to Grand Inheritance. I have subsequently learned that Collezione refers to its Grand Inheritance-looking collection as "20000" and its English Manor-looking collection as "20200."

16. Shortly after we reviewed these photographs, in October 2004, Universal's lawyers contacted Collezione to object to Collezione's display, distribution, and sale of the 20000 and 20200 collections. Universal also filed this lawsuit against Collezione on

October 22, 2004, but did not immediately serve the complaint pending Collezione's response.

17. In response, upon information and belief, Collezione agreed, without prejudice, not to market or sell its 20000 and 20200 collections while the parties, through counsel, engaged in settlement discussions and negotiations in an effort to reach a satisfactory resolution. Those settlement efforts continued for several months until mid-March, 2005, when Universal learned from seeing advertisements in the industry publication *"Furniture Today"* that Collezione was once again marketing the 20000 and 20200 collections. Copies of the advertisements Collezione ran in *Furniture Today* are included within Universal Exhibits 2.a. and 2.c. As noted above, I am personally familiar with the design details of both Grand Inheritance and English Manor, and when I saw these *Furniture Today* advertisements, my immediate reaction was that the decorative elements on the furniture depicted in the Collezione advertisements are strikingly similar to Grand Inheritance and English Manor. When I had the opportunity to study the photographs more closely, it confirmed my impression that the Collezione collections were strikingly similar to the corresponding Universal collections. From late October 2004 until the time we saw the *Furniture Today* advertisements in mid-March 2005, Universal believed, based on statements made by Collezione's attorney, that Collezione had at least temporarily ceased distribution of its 20200 and 20000 collections.

18. Universal will be irreparably harmed if Collezione is permitted to continue displaying, offering, and selling these competing pieces. Since Collezione bypassed the expensive design process that Universal underwent, Collezione does not have to recoup those costs and can charge much lower

prices for its furniture, if it chooses to do so. Thus, by copying Universal's designs without paying any part of the costs for the development of such designs, Collezione is receiving a subsidy directly from Universal. Collezione charges substantially less for its 20000 and 20200 lines than Universal charges for Grand Inheritance and English Manor, respectively, thereby gaining a competitive advantage to which it is not entitled. For example, upon information and belief, for its competing copies, Collezione charges $500 less than Universal's English Manor bedroom and $150 less than Universal's English Manor dining room furniture. Collezione's copying of Universal's designs, and Collezione's corresponding conduct in the marketplace, threatens to weaken Universal's established relationships with important customers. The impact of that weakening will be very difficult to gauge, because it will consist not only of sales directly lost to Collezione but also of the various kinds of concessions and accommodations that Universal is forced to make to keep its customers.

19. I make this Declaration under penalty of perjury under the laws of the United States and the State of North Carolina

This the 19th day of April, 2005.

_____
Stephen Giles

6

RALLIB01 763506.1