IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNIVERSAL FURNITURE
INTERNATIONAL , INC.,

    Plaintiff,

v.

COLLEZIONE EUROPA USA, INC.,

    Defendant.

Case No.: 1:04CV00977

## DECLARATION OF THOMAS MOSER

1.     My name is Thomas Moser. I am over eighteen years of age and am competent to attest to the matters set forth in this Declaration.

2.     I submit this Declaration in support of the Motion for Preliminary Injunction filed by Universal Furniture International, Inc. ("Universal") in the above-captioned case.

3.     My formal higher education consists of a Bachelor of Science Degree in Speech Education from the State University of New York at Geneseo, and a Master of Arts and Ph.D. in Communications from the University of Michigan. While in graduate school at Michigan, I took substantial graduate level coursework in art history, including classical architecture and forms and their Renaissance and post-Renaissance derivatives in Western art.

4.     I am the founder and President of Thomas Moser Cabinetmakers, a furniture manufacturing and retail company headquartered in Auburn, Maine, with

showrooms in Freeport, ME, Boston, MA, New York, NY, Washington, DC, Chicago, IL, and San Francisco, CA.

5. I have been studying the history of furniture design, designing original furniture, and manufacturing furniture by hand for most of my adult life. I have read and maintain a library of several hundred of books devoted to the topic of furniture design, both contemporary and historical. I am frequently asked to lecture on furniture design and manufacturing to furniture industry audiences, including both manufacturers and designers. For example, I have been asked to deliver a lecture on contemporary furniture design at the Smithsonian Institution in Washington, D.C. in June 2005, I have lectured at the Rhode Island School of Design, the Cooper-Hewitt Design Museum in New York City, the Philadelphia Museum of Art, the Museum of Modern Art in San Francisco, the Frank Lloyd Wright Foundation in Chicago, . I have been asked to be the keynote speaker at the Furniture Component Manufacturers Association meeting in Destin in April of 2005, to address topics relating to international competition and outsourcing. I have lectured in Grand Rapids, Michigan at the American Forestry Institute on the future of the furniture industry in the United States.

6. I have been awarded numerous prizes and honors for furniture design, including two Daphne Awards from the American Hardwood Institute, two gold medals and one bronze medal from the Institute of Business Designers, and an honorary Doctorate from Northwood Institute in Midland, Michigan.

7. I have authored and published four books that address topics related to furniture design and manufacturing: *Thos. Moser: Artistry in Wood* (Chronicle Books, 2002); *Measured Shop Drawings for American Furniture* (Sterling Pub. Co., 1988); *Thomas Moser's Windsor Chairmaking* (Sterling Pub. Co., 1982); and *How to Build Shaker Furniture*, (Sterling Pub. Co., 1979).

8. I have expertise, and believe I am qualified to testify as an expert witness, in numerous areas relating to furniture design and the furniture industry, including the following: historical furniture design; European and American furniture design traditions; and furniture industry practices, especially the relationship between design, manufacturing, marketing, and distribution.

9. I have reviewed numerous photographs and brochures provided to me by counsel for Universal which depict the English Manor and Grand Inheritance furniture collections manufactured by Universal. Representative examples of those photographs and brochures are contained in Exhibits 1A and 1B of the Universal Exhibits submitted in support of Universal's Motion for Preliminary Injunction. I have also reviewed and examined examples of Universal's Grand Inheritance furniture collection in person. In addition, I have reviewed a declaration of furniture designer Steven Russell dated in March of 2004, regarding his design of Universal's Grand Inheritance collection.

10. In my opinion, the designs of the Grand Inheritance and English Manor collections each contain substantial artistic creativity and originality, which is expressed primarily in their selection and use of an enormous number of non-

3

functional, ornamental design elements. Exhibits 3A and 3B of the Universal Exhibits are depictions of many of the ornamental, non-functional design elements that appear in Grand Inheritance and English Manor, respectively. Based on my review of the materials and exhibits referred to above, it is evident to me that the compilation – that is, the selection, coordination, and arrangement -- of these ornamental, non-functional design elements within both Grand Inheritance and English Manor contains substantial creative artistry that was necessarily the result of significant intellectual and creative labor. The training and more than thirty years of experience that Mr. Russell states that he has are evident in the English Manor and Grand Inheritance designs. An inexperienced and unskilled designer could not have created these designs or developed these compilations or ornamental elements in a way that is as aesthetically coherent and appealing as Grand Inheritance and English Manor.

11. The Grand Inheritance and English Manor designs , which depend largely on decorative, non-functional ornamentation for their aesthetic impact, are the tangible expression of the designer's creative artistry. In my opinion, based on my decades of experience designing, manufacturing, and selling furniture and observing the furniture industry, protecting such tangible creativity against unauthorized copying promotes creativity because it guarantees that creators will be compensated in some way for their creative work.

12. The creativity and originality of the English Manor and Grand Inheritance designs is evident at a variety of levels, ranging from the designer's

4

selection of particular ornamental design elements from among the hundreds -- or even thousands – that were initially available to him at the beginning of the design process, to his adaptation and transformation of those elements into the particular forms used on Grand Inheritance and English Manor, to his skillful blending of those ornamental elements into an aesthetically coherent overall design.

13. The design of the Grand Inheritance collection, most broadly, is a successful synthesis of ornamentation from several different historical design influences, including 18th and 19th century English and American as well as Classical (Greek and Roman) forms. By selecting the particular ornamental elements he chose from the many that were available, the designer of Grand Inheritance successfully merged these varied influences into an aesthetically harmonious whole which, artistically, is greater than the sum of its parts.

14. Examples of the design traditions that Grand Inheritance draws on include Classical (both Roman and Greek), as well as those and 18th and 19th Century English and American traditions commonly referred to as Chippendale, Hepplewhite, Federal, Sheraton, Empire, and Queen Anne.

15. It is my understanding that Grand Inheritance was designed in 2000 and 2001. Other than furniture designs which were created by others after Grand Inheritance in an effort to copy Grand Inheritance and which have been the objects of copyright infringement lawsuits brought by Universal, I am not aware of any other furniture collections that combine the same historical influences in ornamental, non-functional design elements in a similar way to Grand Inheritance.

5

16. English Manor is also a highly original and creative design, including in its compilation (i.e., its selection, coordination, and arrangement) of decorative, non-functional design elements. English Manor is more stylistically homogenous than Grand Inheritance, drawing on a more focused range of design influences than Grand Inheritance, largely consisting of late 18th and early 19th century Georgian influences. Nevertheless, it is clear that in numerous respects the designer has taken liberties with the historical forms on which he draws. He has drawn various elements together in an original way, and has deployed elaborate ornamentation, including the elements depicted in Exhibit 3A, in a way that results in a far more exuberant aesthetic impact than would be characteristic of Georgian period furniture.

17. In my opinion, both the Grand Inheritance and English Manor designs are skillfully executed. While it is my understanding that substantial artistic merit is not a prerequisite for copyright protection, the Grand Inheritance and English Manor designs, in my opinion, undeniably contain such merit. The degree of ornamentation used in Grand Inheritance and English Manor, in the hands of an unskilled designer, would threaten to overwhelm the suite. With Grand Inheritance and English Manor, however, it does not, and in my opinion this is due to the skillfulness of the designer as expressed in his sense of artistic proportion and his selection, adaptation, coordination, and arrangement of the ornamentation.

6

18.    Functional considerations are never entirely absent from furniture design. Even the most structurally superfluous item must be capable of being manufactured relatively efficiently and economically. With contemporary furniture designs, in which the use of ornamentation is sparing, it is sometimes extremely difficult to separate aesthetic considerations from functional or structural ones. Indeed, much of the beauty found in many contemporary furniture designs – for example, the work of the celebrated Danish designer Hans Wegner -- comes from the subtle and graceful ways in which structural needs are satisfied.

19.    Grand Inheritance and English Manor are quite different from such spare contemporary designs. With the Grand Inheritance and English Manor collections, it is definitively the ornamentation – the detailed carvings, moldings, and trim work depicted in Exhibits 3A and 3B – and not the underlying structural design or the functional aspects of the furniture, that drive the aesthetic impression of each collection. Grand Inheritance and English Manor are furniture designs whose artistic merit lies chiefly in their skillful deployment of ornamentation. Stripped of the elements identified in Exhibits 3A and 3B, the collections would lose virtually all of their aesthetic appeal. They would be like a Christmas tree with all of the ornaments removed, and would have little, if any, commercial value. While this is not true of all furniture designs, especially more contemporary ones in which structural and aesthetic considerations are less distinct from each other, and the use of ornamentation is minimal, it is true both of Grand Inheritance and English Manor. Indeed, based on my review of the Grand

7

Inheritance and English Manor collections, removing the ornamentation from the pieces on which it appears would have absolutely no impact on how the pieces perform from a purely structural and functional perspective. In short, it is my opinion that none of the ornamental elements within the Grand Inheritance or English Manor collections, which are depicted in Exhibits 3A and 3B hereto, were dictated by functional considerations. The use of completely different ornamental elements – or no ornamental elements at all – would have no impact at all on the function of the pieces of furniture.

20. While Grand Inheritance and English Manor draw on period influences, they differ from period reproductions, where the designer attempts to emulate one specific style, or even one specific historical person or piece, and the real challenge is in the craftsmanship and execution – i.e., the actual woodworking. With such period reproductions, the design decisions have largely already been made, hundreds of years ago.

21. With Grand Inheritance and English Manor, by sharp contrast, the real challenge for the designer was the creative work that was required and exerted first in choosing and then in blending so many different ornamental elements into an aggregate whole that remains aesthetically coherent – that is, that "holds together" artistically. Regardless of what one's individual aesthetic tastes may be, in my opinion it is undeniable that the Grand Inheritance and English Manor collections effectively "hold together" aesthetically. Furniture designers do not achieve such aesthetic coherence by blind luck or random chance; rather, that kind

8

of aesthetic coherence is the tangible expression of the designer's artistic creativity, developed through a combination of natural artistic talent and years of experience.

22. In my experience, an aesthetically successful furniture design does not result unless the designer is aware at all times of how a particular design detail within the suite of furniture interacts both with other details on the same piece and on other details within the rest of the suite. In my opinion, the particular ways in which the ornamental elements within both Grand Inheritance and English Manor have been selected, coordinated, and arranged, clearly reveal exactly that kind of artistic awareness by the designer.

23. It is evident to me that the designer of Grand Inheritance and of English Manor made creative decisions as to particular ornamental elements with reference not only to how that ornamentation would look on its own, but also to how it would look in combination with other ornamental elements appearing on the same piece, on "nearby" pieces in the collection, and on the collection as a whole.

24. In sum, it is my opinion that both the Grand Inheritance and English Manor collections contain substantial creativity, far more than simply a "minimal spark." Artistic creativity in those two collections is evident, specifically, in the following:

- The selection of particular ornaments from among the many possibilities to achieve the designer's aesthetic aims.

9

Case 1:04-cv-00977-WO-PTS    Document 14    Filed 05/09/05    Page 9 of 16

- The adaptation of elements from public domain representations, which requires significant artistic creativity.

- The creation of new ornamental elements, such as the finial detail Mr. Russell mentions in his Declaration.

- The blending and adaptation of the ornamental elements that were selected, adapted, and created into an integrated compilation that expresses a particular aesthetic look throughout each collection and their many subparts. This complation is an important part of what gives each collection its identity as a collection, and what allows the customer or viewer to recognize that certain pieces fit within the particular collection.

25. Based on the photographs I have seen of two Collezione Europa collections (included in Exhibits 2A, 2B, and 2C of the Universal Exhibits), which I will refer to herein as "Collezione/GI" (the analogue to Grand Inheritance) and "Collezione/EM" (the analogue to English Manor) the design of those Collezione collections are strikingly similar to the analogous Universal collections at multiple levels. The similarities are so striking that I find it virtually impossible to imagine that the Collezione collections were not copied from the Universal collections.

26. Beginning at the "micro" level, several individual ornamental elements within Collezione/GI (*see* Exhibits 2A, 4A) appear to me to be very close copies of the corresponding elements from Grand Inheritance. These include, for example, the pilaster, bracket foot, and column motifs that recur throughout each

10

collection, the corner brackets and frame of the mirror. It is evident to me that whoever designed Collezione/GI must have copied these elements either from an example or from a substantially similar reproduction of Grand Inheritance.

27. Similar copying is evident between the version of Collezione/EM depicted in Exhibits 2C and 4C, and English Manor (Exhibits 1B and 3B). For example, the following elements appear to me to be so similar that they must have been copied: the compilation of decorative elements appearing on the footboard in the bedroom suite, including the bracket feet and the scroll carving, ogee moulding, and flower or leaf motif appearing on it; the decorative mouldings appearing at various places on the footboard; the size, proportion, scale, and shape of the funereal urn on the bedpost; the rope pattern at the base of the bracket feet; the relief carvings in the bedposts; the decorative paneling, both of which include a vertical grain wood framed by an approximately 1.5 inch inlay, underneath a narrower rail, with a concave quarter round moulding at the top. In both collections there is a cockbead just below the quarter round moulding, and a small, half-round moulding that extends not only on top of rail but also frames the posts on both beds. All of the elements described in this paragraph are decorative and ornamental. They are not functional.

28. I offer this list of detailed similarities in the footboard only as an example of the kinds of substantial similarities I see throughout the English Manor collection and its Collezione look-alikes. To catalog all of the similarities existing throughout the two collections would take many pages. In my opinion, the

11

Collezione look-alike depicted in Exhibits 2C and 4C is strikingly similar to English Manor, especially in the way in which the decorative elements have been selected, coordinated, and arranged – i.e., compiled – throughout the collection. The compilation of decorative elements described above, which appears just on the footboards of the two collections, is only a small subset of the overall compilation contained in each collection.

29. Many of the differences between the Collezione collections and the Universal collections are modest and appear to have been made in an effort not to disrupt the overall aesthetic impression of the Universal collections' ornamentation and to minimize the manufacturing cost of making changes. .

30. Not only are the ornamental details of the Collezione collections strikingly similar to those in the Universal analogues, but the selection, coordination, and arrangement of those details within each collection are also strikingly similar. Given Collezione/GI's and Collezione/EM's virtually exact duplication of so many of the ornamental design elements of Grand Inheritance and English Manor, respectively, and the arrangement of the ornamental elements within the collection in a very similar way, it is not surprising that the overall aesthetic impact of Collezione/GI is substantially similar to that of Grand Inheritance and that the overall aesthetic impact of Collezione/EM is substantially similar to that of English Manor.

31. For example, Collezione/GI does not simply copy the pilasters from various pieces in Grand Inheritance  it also arranges those pilasters in exactly the

12

same way – on the exactly corresponding pieces -- within the collection. (*See* Exhibits 2A, 4A). Similarly, the decorative elements within the English Manor footboard are reproduced in exactly the same places on the exactly corresponding piece on Collezione/EM. (*See* Exhibits 2C, 4C).

32.     In light of these striking similarities both at the broad level of each overall design, and at the detailed level of particular ornamental design elements, it is inconceivable to me that the Collezione collections could have been created without Grand Inheritance and English Manor, or substantially similar reproductions of them, as their primary – indeed, their virtually exclusive -- reference points.

33.     Thus, it is apparent to me that whoever designed Collezione/GI and Collezione/EM took a tremendous shortcut around the difficult, creative, sometimes frustrating, but ultimately valuable and rewarding process of design that the designer of Grand Inheritance and English Manor had to undergo. The designer of Collezione/GI and Collezione/EM was, in my opinion, not truly a designer, but simply a copier who appropriated the tangible expression of the creative labor of the person who designed Grand Inheritance and English Manor. In my opinion, such copying is both disheartening to designers and damaging to the design profession and the furniture industry as a whole.

34.     Ultimately, the only substantial difference between the Universal collections and the Collezione collections is the type, amount, and quality of the work done by the people who designed the two sets of collections. The person

13

who designed Grand Inheritance and English Manor went through a richly creative process that drew in a variety of ways on his creative judgment, his experience, his expertise, and his artistic skill. The "designer" of Collezione/GI and Collezione/EM, by contrast, simply engaged in the far easier and less burdensome task of duplication.

35. In my opinion, based on my experience as a furniture designer and manufacturer, as the founder and executive officer of a furniture design and manufacturing company, and as a student of furniture design and the furniture industry, it is critically necessary to the health of both the furniture industry and the modern economy that intellectual and creative work of the type that went into the Grand Inheritance and English Manor collections be protected. I can attest from personal experience that furniture manufacturers and the furniture industry as a whole invest enormous resources in creating designs they hope will appeal to consumers. On top of those costs, it requires enormous additional resources to monitor and enforce one's intellectual property rights. If such intangible works are not protected, and the fruits of one's creative and intellectual labors simply become free for the taking, companies and individuals will quickly realize that there is nothing to be gained by investing in the creative process. The consequences of that, in my opinion, would be devastating, both artistically and economically.

14

36.     I make this declaration under penalty of perjury under the laws of the United States and the State of North Carolina.

This the ____ day of April 2005.

_____
Thomas Moser

Case 1:04-cv-00977-WO-PTS    Document 14    Filed 05/09/05    Page 15 of 16

36.    I make this declaration under penalty of perjury under the laws of the United States and the State of North Carolina.

This the 22 day of April 2005.

Thomas Moser

15