# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNIVERSAL FURNITURE INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:04CV00977 |
| COLLEZIONE EUROPA USA, INC., | ) ) | |
| Defendant. | ) | |

## ORDERS AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on the Motion for Preliminary Injunction filed by Plaintiff Universal Furniture International, Inc. ("Universal"). (Pleading No. 10.) By this motion, Universal seeks an order enjoining Defendant Collezione Europa USA, Inc. ("Collezione") from infringing Universal's design copyrights related to its furniture collections known as Grand Inheritance and English Manor. In response, Collezione contends that its furniture does not infringe Universal's design copyrights, and, in any event, that the copyrights are invalid. The parties have fully briefed their positions and the Court heard oral argument on August 24, 2005. The Court now, after careful review, recommends that Universal's preliminary injunction motion be denied.

## Factual Background

Universal is a manufacturer and seller of home furnishings. In 2000, Universal retained Norman Hekler Design, Inc., an outside firm specializing in furniture design, to create a new collection of dining room and bedroom furniture. The collection was to be known as the "#474 Grand Inheritance collection." Universal envisioned that the furniture should appear to consumers to be traditional, with an ornate, opulent look. Steven Russell of Norman Hekler was the principal designer of the Grand Inheritance collection. Mr. Russell, according to Universal, made a number of creative decisions in designing Grand Inheritance, including (1) reviewing a variety of public-domain sources and selecting designs, (2) experimenting with a number of ornamental arrangements before settling on a final design, (3) having the collection feature a large number of ornamental, curved motifs, (4) not creating a period reproduction, (5) selecting designs from a variety of influences, (6) adapting the ornamental designs selected from two-dimensional source books, (7) creating at least one original decorative element – a bedpost finial, and (8) attending to the overall aesthetic impression of the elements as combined throughout the Grand Inheritance collection.

Universal has offered the Grand Inheritance collection for sale publicly since April 2001. It applied for and obtained from the United States Copyright Office a copyright for the Grand Inheritance designs bearing registration number VA1-169-932 (the "'932

Registration"), effective May 1, 2003. Universal subsequently received a supplementary copyright registration, bearing number VA1-188-951 (the "'951 Registration").

Universal also engaged Norman Hekler to create a bedroom and dining room collection to be called the "#609 English Manor collection." Once again, Mr. Russell was the primary designer. Universal asserts that on this occasion Mr. Russell started with the broad idea of creating a traditional appearance that would be aesthetically appealing to consumers who appreciate antiques. He then followed a design process similar to that used with regard to Grand Inheritance. Universal has offered the English Manor collection for sale publicly since 2002, and has obtained a copyright registration for the English Manor designs, VA1-227-506 (the "'506 Registration"), effective November 14, 2003.

In October 2004, Universal learned that Defendant Collezione was displaying in Collezione's showroom two furniture collections that appeared to be close copies or exact duplicates of the Grand Inheritance and English Manor collections. In fact, on investigation, representatives of Universal concluded that the furniture pieces being displayed in the Collezione showroom were actual pieces of English Manor manufactured by Universal. Universal also observed in the Collezione showroom a furniture collection that looked similar to Grand Inheritance. Shortly after that time, Universal's attorneys contacted Collezione to give notice of objection to Collezione's manufacture and sale of its "20000 collection" (allegedly similar to Grand Inheritance) and its "20200 collection" (allegedly similar to English Manor).

Universal filed this civil action against Collezione in October 2004, but did not immediately serve the Complaint pending Collezione's response to Universal's notice of objection. Universal asserts that, in response to the objection, Collezione agreed not to market its 20000 and 20200 collections while the parties investigated the matter. Universal reports that in mid-March 2005, however, it learned that Collezione was again marketing its 20000 and 20200 lines. This litigation thereupon resumed in earnest with a formal Answer and Counterclaims by Collezione, and a motion for preliminary injunction by Universal.

Not surprisingly, Collezione presents factual showings that tend to paint a somewhat different picture. Collezione states that it is in the business of selling furniture at lower prices than others. In this way, it offers consumers affordable, high quality furniture. Collezione maintains that it takes prompt action to investigate charges that it is infringing intellectual property rights in the manufacture of its furniture. Collezione forthrightly acknowledges that, initially in 2004, it intended to sell furniture that was closely similar to Universal's Grand Inheritance and English Manor collections. In October 2004, however, Universal protested the sale of Collezione's 20000 and 20200 collections and informed Collezione of its design copyright registrations. Collezione proffers that before this time it was unaware that Universal claimed intellectual property rights in the furniture lines, and that Universal's Grand Inheritance and English Manor furniture did not display any notice of copyright.

4

According to Collezione, it never manufactured or sold any of its originally designed 20000 or 20200 collections. Instead, upon being informed of Universal's claim of copyright protection, it substantially redesigned its 20000 and 20200 collections. Collezione hired an independent designer to alter the design elements of the furniture, and the new designs were advertised for the first time in March 2005. In defense of Universal's preliminary injunction motion, Collezione contends that its redesigned 20000 and 20200 collections are not substantially similar to Universal's Grand Inheritance or English Manor collections, and that, in any event, Universal's design copyrights are invalid and unenforceable.[1]

## The Preliminary Injunction Standard

Section 502(a) of the Copyright Act, 17 U.S.C. § 502(a), authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." In the Fourth Circuit, a district court deciding a motion for preliminary injunction should consider four factors: (1) the plaintiff's likelihood of success on the merits of the underlying dispute; (2) the possibility of irreparable harm to the plaintiff if preliminary relief is denied; (3) the harm to the defendant if an injunction is issued; and (4) the public interest. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). The factors are weighed on a sliding scale, and,

---

[1] It is only the redesigned Collezione collections that are fairly in issue in this proceeding, since there is no showing of any likelihood that Collezione would, in fact, manufacture or sell its originally designed 20000 or 20200 collections.

5

> The two more important factors are those of probable irreparable injury to [the] plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of [the] plaintiff, it is enough that grave or serious questions are presented; and [the] plaintiff need not show a likelihood of success.

*Id.* On the other hand, if the balance of harm is not shown to be in the plaintiff's favor, the importance of the Plaintiff showing a likelihood of success on the merits increases. *See id.* at 195.

This Court should first look to factors (1) and (2) of the *Blackwelder* test. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)("The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors.") As a first step, the Court must assess the likelihood of irreparable harm to the plaintiff. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974) (basis of injunctive relief in federal courts is irreparable harm and inadequacy of legal remedies). Such harm must be "neither remote nor speculative, but actual and imminent." *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). If the plaintiff makes a clear showing of irreparable harm in the absence of injunctive relief, the Court must then balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant if an injunction is issued. If, upon balancing, the balance tips decidedly in favor of the plaintiff, a preliminary injunction should be granted if the plaintiff has presented serious and substantial issues that are fair ground for litigation. On the other hand, as the balance of hardships tips away from the plaintiff, a stronger showing of likelihood of success on the merits is required of the

6

plaintiff. *See generally Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359-60 (4th Cir. 1991).

With this standard in mind, the Court will review the showings made by the parties on Universal's motion for a preliminary injunction.

## Discussion

### The Balance of Hardships

Universal asserts that it is suffering irreparable harm as a result of Collezione's manufacture and sale of Collezione's allegedly infringing 20000 and 20200 furniture collections, and will continue to do so unless a preliminary injunction is granted. As an example of irreparable harm, Universal asserts that Collezione "bypassed" the expensive design process that Universal used, and thus can charge significantly lower prices for its furniture. According to Universal, this disparity in price serves to damage Universal's reputation and to weaken Universal's relationships with important customers. Universal also argues that the health of the furniture industry requires legal protection for the intellectual property of manufacturers such as Universal.

The Court finds that Universal has, by its proffer of evidence, shown an immediate threat of irreparable injury. The injury to Universal's reputation by reason of Collezione's allegedly similar, but cheaper, furniture, and the potential damage to its customer relations would be difficult to quantify and recompense, and therefore is irreparable in nature. Of course, a major source of injury to Universal (if Collezione is subsequently found in this

7

litigation to have infringed Universal's design copyrights) will be in the form of sales lost by Universal and wrongly appropriated by Collezione, but that injury may be largely addressed by quantifiable legal damages, and is not irreparable in nature.

Having found that Universal is incurring irreparable injury, the Court must consider the probable harm to Collezione if an injunction were to issue. Collezione's showing of potential injury is quite similar to that of Universal. If Collezione is enjoined from selling its 20000 and 20200 collections, it will be required to cancel or recall all of its outstanding orders. Such a cancellation and recall would occasion injury to Collezione's reputation and to its customer relations. Collezione shows by competent evidence that close to one hundred customers, accounting for nearly ten percent of Collezione's unshipped orders, are expecting receipt of the 20000 or 20200 furniture. Collezione would undoubtedly face claims by its suppliers if it is prevented from completing sales. Further, Collezione shows that the issuance of an injunction will likely damage its relationship with retail dealers. These dealers will be unable to deliver goods promised to customers and may be hesitant in the future to make purchases from Collezione.

Balancing the harm to a plaintiff if an injunction is not granted against the harm to a defendant if an injunction is granted can be a difficult task. In the case at bar, however, it is apparent that the potential harm to each party from an adverse ruling is strikingly similar in nature and extent. One party or the other will lose sales, and one party or the other will stand to be damaged in reputation and in important business relationships. The Court finds

that the balance of hardships stands in equipoise. This, in fact, is the precise conclusion reached by United States District Judge Frank W. Bullock, Jr. of this court in the context of a preliminary injunction motion under circumstances quite like those present here. *See Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.,* No. 2:96CV00340 (M.D.N.C. May 28, 1996) (Hr'g Tr. at 37-38), *aff'd,* No. 96-1917, 1997 WL 337465 (4th Cir. 1997) (unpublished opinion). In *Magnussen*, the alleged infringer of a furniture design copyright was found to face approximately the same quantum of harm from the grant of a preliminary injunction as would the plaintiff, who claimed copyright protection, from the denial of an injunction. The *Magnussen* court analyzed the balance of hardships to the parties and found them to be equal. This Court finds every reason to follow *Magnussen* under the indistinguishable circumstances of this case.

Accordingly, Plaintiff Universal, as the moving party, has failed to show that the balance of harm tips decidedly, or even significantly, in its favor. Under the *Blackwelder* test, this finding by the Court is significant and influences the degree of likelihood of success that Universal must show if it is to be entitled to a preliminary injunction. Since the balance of hardships is in equipoise, it is not enough that Plaintiff Universal show that it has a serious infringement claim that is fair ground for litigation; it must show a probability of success by demonstrating that it has a clear and strong case. *See Direx Israel*, 952 F.2d at 813. For reasons set out below, the Court finds that Universal cannot meet this standard.

9

<u>Universal's Likelihood of Success</u>

This case is in its earliest stages, and no discovery has yet been permitted to either side. Plaintiff Universal filed its preliminary injunction motion before the scheduling of an initial pretrial conference, at which the Court would have established a period of discovery for the parties. Accordingly, the merits of Universal's copyright claim, and of Collezione's defenses and counterclaims, have not been subjected to the test of discovery.

To make out a claim for copyright infringement under the Copyright Act, Universal must prove two elements: (1) ownership of a valid copyright, and (2) copying by Collezione. *See Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988). In this case, Universal owns certificates of registration from the United States Copyright Office, and those certificates constitute *prima facie* evidence of copyright validity. *See* 17 U.S.C. § 410(c). However, the *prima facie* case is not irrebuttable, and contrary evidence may be presented on this issue. *See Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n.1 (4th Cir. 1994)("Where other evidence in the record casts doubt on the question, validity will not be assumed.") It has been noted by district courts that the attention the Copyright Office gives to an application for registration is not like the intense and prolonged scrutiny given to patent and trademark applications. *See, e.g., Carol Barnhart, Inc. v. Economy Cover Corp.*, 594 F. Supp. 364, 367 (E.D.N.Y. 1984); and *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F. Supp. 2d 444, 452 n.7 (M.D.N.C. 2003).

10

Collezione resists Universal's preliminary injunction motion on both major grounds relevant to Universal's copyright claims. Collezione first argues that Universal's design copyrights are invalid, and second that, even assuming validity, Collezione has not, in manufacturing its redesigned 20000 and 20200 collections, copied Universal's designs.

Analysis of these issues starts with a definition of the scope of the copyrights claimed by Universal. With regard to its '932 Registration, Universal first obtained a certificate covering "decorative sculptural designs on furniture" with regard to its Grand Inheritance collection. (Pleading No. 11, Pl.'s Br. in Supp. of Mot. for Prelim. Inj., Ex. 6.) Thereafter, Universal obtained a supplementary registration ('951) wherein it amplified its claim. Universal redefined the scope of its claim to include "'decorative sculptural designs on furniture; adaptation of preexisting decorative designs; compilation of decorative designs on suites of furniture.'" *Id.* Universal identified "'public domain ornamental designs'" as preexisting material, explaining that "several of the ornamental designs appearing on the work are the author's adaptations of designs that are in the public domain." *Id.* With respect to material added to the work, Universal identified "'original decorative designs; original adaptations of public domain decorative designs; original selection, coordination, and arrangement of original and public domain decorative designs appearing on suites of furniture.'" *Id.*

With regard to its English Manor collection, Universal obtained a certificate of registration (the '506 Registration) describing "[d]ecorative designs on furniture and

11

compilation of such designs." (Pl.'s Br., Ex. 7.) With respect to "Derivative Work or Compilation," Universal identified "[p]ublic domain ornamental designs." *Id.* And under the heading marked "Material Added to This Work," Universal stated "[o]riginal decorative designs appearing on suites of furniture including original adaptations of public domain designs and original compilation of decorative designs." *Id.*

A primary consideration on the issue of copyright validity is the "originality" of the work for which copyright protection is claimed. The standard for judging originality is not demanding; however, originality requires only "independent creation plus a modicum of creativity." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991). Collezione challenges the originality of Universal's work, arguing that

> Plaintiff admits that the designs in the Grand Inheritance and English Manor designs, except for the Grand Inheritance bedpost finials, are a compilation of old design elements from the 18th and 19th Century. Plaintiff's designer also admits that he used at least three source books and hundreds of examples of two-dimensional depictions of carved ornamental design motifs on furniture when he designed Plaintiff's furniture.

(Pleading No. 20, Def.'s Br. in Opp'n to Pl.'s Mot. for Prelim. Inj. at 12.) At the same time, Collezione argues that it is unable to make an evidentiary showing to support its challenge on the issue of originality because it has not yet been granted an opportunity for discovery. Collezione contends that it needs to see Plaintiff's source books before it is in a position to confront Universal's claim of originality, particularly when the copyright registrations specifically disclose that preexisting decorative designs drawn from the public domain are a basis of the work for which copyright is claimed. Collezione argues that it may be able to

show, after discovery, that Universal's copyrights are "thin" due to "scant creativity," and therefore differences between Plaintiff's and Defendant's designs (relevant to the issue of copying) become more important. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 163 (E.D.N.Y. 2002).

The Court is sympathetic to Collezione's position, although mindful that only a minimal amount of originality will suffice to support a copyright, and the present record strongly suggests the requisite originality in Universal's design compilations. It is undoubtedly true that without full discovery of Plaintiff's process of creating the designs under the '932, '951 and '506 Registrations, Plaintiff is at a procedural disadvantage. Were the issue of originality (and the potential "thinness" of Universal's copyrights) determinative of Universal's motion, the Court would consider allowing discovery on this issue before reaching the preliminary injunction motion. However, for reasons set out below, the Court finds that Universal's motion fails on a separate ground, and therefore the Court does not reach Collezione's request for discovery before determining the pending motion.

A second issue regarding the validity of Universal's copyrights concerns the "separability" of Universal's design features from the utilitarian aspects of its Grand Inheritance and English Manor furniture. United States District Judge William L. Osteen of this court has had recent occasion to canvas the law regarding these copyright issues of utility and the conceptual separability of aesthetic design features. The Court will set out

13

at length Judge Osteen's discussion in *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F. Supp. 2d 444 (2003):

> Copyright protection is not available for useful articles, defined by the Copyright Act as articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. As the Act explains:
>
> > [T]he design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work *only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from*, and are capable of existing independently of, the utilitarian aspects of the article.
>
> *Id.* (emphasis added). In other words, if a useful article has aesthetic features that cannot be identified separately from the article, copyright protection is not available. *See Carol Barnhart,* 773 F.2d at 418.
>
> "Of the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectable pictorial, graphic and sculptural works and unprotectable utilitarian elements of industrial design." *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 170 F. Supp. 2d 828, 832 (N.D. Ill. 2001) (Easterbrook, J., sitting by designation) (quoting Paul Goldstein, 1 *Copyright: Principles, Law & Practice* § 2.5.3 at 99 (1989)). The "fine line" between the protectable and unprotectable is that of separability, an abstract concept describing the potential for a particular artistic work to be considered, either physically or conceptually, apart from its utilitarian aspects. *See id.*
>
> The seminal Supreme Court case of *Mazer v. Stein*, 347 U.S. 201, 74 S. Ct. 460, 98 L. Ed. 630 (1954), illustrates this concept of separability. There, the Court considered whether a statuette of a dancer, when used as the base of a lamp, would no longer be entitled to copyright protection due to the utilitarian nature of the lamp itself. Reasoning that the statuette was not stripped of its identity as a work of art merely because it was incorporated into a useful item, the Court held that it could be copyrighted. *Id.*, 347 U.S. at 214, 74 S. Ct. at 468. The statuette was separable both because it could physically

14

exist separately from the lamp and the lamp could function as a utilitarian item without it.

The holding in *Mazer* was later incorporated into the legislative history accompanying the passage of the Copyright Act, which further delineates the concept of separability:

> [T]he Committee is seeking to draw as clear a line as possible between copyrightable works of applied art and uncopyrightable works of industrial design. A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like. The same is true when a statute or carving is used to embellish an industrial product or, as in the *Mazer* case, is incorporated into a product without losing its ability to exist independently as a work of art. . . . [O]nly elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three-dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the over-all configuration of the utilitarian article as such.

H. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668. As this report reveals with its reference to chair carvings and flatware designs, a copyrightable work need not be physically separable, like the lamp in *Mazer*. It may be embedded or fixed within a useful item and still be conceptually separable (although neither the flatware nor the chair, as useful articles, would be copyrightable).

Conceptual separability focuses not on "whether the features to be copyrighted could be sliced off for separate display, but whether one can conceive of this process." *Pivot Point*, 170 F. Supp. 2d at 833. For example, in the case of *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980), the Second Circuit determined that ornamental designs on belt buckles could be conceived apart from the utilitarian nature of the belt buckle and thus were copyrightable. 632 F.2d at 993. Similarly, Judge Mukasey found an intertwined banana leaf design to be copyrightable because it was

15

conceptually separable from the lamp bases on which it appeared, observing that "it takes no great feat of ratiocination to separate the concept of the banana leaves from the concept of the lamps." *Sunset Lamp Corp. v. Alsy Corp.*, 698 F. Supp. 1146, 1151 (S.D.N.Y.1988).

  The court finds that Professor Goldstein's conceptual separability test adopted by Judge Easterbrook in *Pivot Point, supra*, captures the requirements of conceptual separability as they apply to this case: a "'sculptural feature incorporated in the design of a useful article is conceptually separable if it can stand on its own as a work of art traditionally conceived, and if the useful article in which it is embodied would be equally useful without it.'" 170 F. Supp. 2d at 833 (quoting Goldstein, § 2.5.3 at 2:67). Applying this test, Judge Easterbrook determined that a human mannequin head used by beauty school students to practice applying make-up and styling hair was not copyrightable because it would not be equally useful without its aesthetic features. *See id.* (noting that neck, eyes, and cheeks of mannequin were utilitarian as well as aesthetic features).

*Id*. at 454-55.

This Court finds *Hillsdale* to be instructive authority regarding the test for "conceptual separability" in the context of copyright validity.[2] Accordingly, the Court will apply the "Goldstein/*Pivot Point*" test for conceptual separability, as adopted in *Hillsdale*, to the design compilations for which Universal claims copyright protection.

------

  [2] In *Magnussen*, 1997 WL 337465, at *3, the Fourth Circuit recognized in an unpublished decision that the conceptual separability test may include a marketability test such that the article for which copyright is claimed must be "marketable to some significant segment of the community simply because of its aesthetic qualities." This *Magnussen* test of "marketability" could be found to have application to Universal's copyrights in this case, in which case the claimed copyrights for design compilations would likely be invalid. In this Recommendation, however, the Court applies the less stringent test for conceptual separability adopted by the district court in *Hillsdale*, finding that Universal's preliminary injunction motion should be denied even by that test which is more favorable to Universal. The tension between the *Magnussen* test and the *Hillsdale* test need not be resolved at this preliminary stage, and is reserved for later determination.

The Goldstein/*Pivot Point* test, as applied to the embedded sculptural features at issue in this case, has two parts: (1) can the sculptural features stand on their own as a work of art traditionally conceived, and (2) would the useful articles in which they are embodied be equally useful without it. Review of the compilation of design features in which Universal claims copyright protection persuades the Court that part (2) of the test is likely met on the present record. At least at this stage of litigation, it appears that if all of the design features that comprise Universal's design compilations were removed from its Grand Inheritance and English Manor collections, the furniture pieces would remain equally useful.

Application of part (1) of the Goldstein/*Pivot Point* test is more problematic. Universal seeks a preliminary injunction that would prohibit Collezione from manufacturing and marketing its 20000 and 20200 collections on the ground that these collections infringe design copyrights related to Universal's Grand Inheritance and English Manor collections. Such a broad injunction, covering not just one or two decorative designs, but, effectively, entire furniture collections, could be supported only upon a showing that Universal's design *compilations* are copyrightable. In order to be copyrightable, of course, these compilations must be "conceptually separable" from the useful functions of Universal's furniture. In the language of the Goldstein/*Pivot Point* formulation, the compilations of sculptural features must "stand on their own as [] work[s] of art traditionally conceived."

Universal contends that its compilations of adapted public-domain designs meet this test. Universal argues:

17

It is beyond question that, if Universal had simply published the collections of decorative design features that appear on Grand Inheritance and English Manor in a catalog of prospective furniture designs, such a compilation would be conceptually separable and therefore copyrightable, and that anyone who copied such a compilation would be an infringer. Universal's compilations should not be accorded any less protection because, instead of appearing in a catalog, they are collected and displayed on actual furniture and/or advertising photographs for furniture.

(Pleading No. 28, Pl.'s Reply Br. in Supp. of Mot. for Prelim. Inj. at 6-7.) The Court rejects this argument, however, for the simple reason that the argument proves too much. No design compilation could ever fall outside its apparent reach. The flaw in Universal's argument is that such a photographic collection may well not stand on its own as *a work of art traditionally conceived*. Collezione's counter-argument on this issue of conceptual separability is that "[b]ecause compilations necessarily depend on the arrangement and location on the furniture, the compilations of design elements cannot exist independently of, or be separated from, the furniture." (Def.'s Br., at 2.) Of course, only abstract and conceptual separability is required, not physical separability. Nonetheless, Collezione's argument may be on point in view of the specific language of Universal's registrations, covering the original selection, coordination, and arrangement and compilation of original and public domain decorative designs "*appearing on suites of furniture*," or "*on furniture.*" (Pl.'s Br., Exs. 6 and 7.)(emphasis added).

In *Hillsdale*, Judge Osteen reached the issue of whether certain leaf designs embedded in furniture pieces manufactured by Hillsdale House could stand on their own as works of art traditionally conceived. He answered the question by finding that "[m]oreover,

18

it is not beyond the court's imagination to conceive of the sculpted leaves as a wall hanging or other decorative item." 243 F. Supp. 2d at 456. It is apparent from these words that significant weight is given to the limitation in the Goldstein/*Pivot Point* test that the separated designs constitute a work of art *traditionally conceived*. A compilation of decorative designs, mostly drawn from the public domain, conceptually removed from the furniture on which they are embedded bears no clear relationship to a traditional work of art. Universal has pointed the Court no case that has interpreted "conceptual separability" so broadly. In its reply, Universal contends that *Hillsdale* supports it position, stating that *Hillsdale* "concerned *multiple* design features that were held to be conceptually separable from the furniture involved in that case . . .." (Pl.'s Reply Br., at 6.) The Court notes, however, that *Hillsdale* was not a "compilation" case, and each design element was reviewed individually for conceptual separability and, therefore, copyrightability.

This Court, finding no existing authority that would extend "conceptual separability" to cover compilations of public-domain design elements in broad furniture collections, and finding the matter in doubt, would decline to potentially enlarge the law of copyright protection on the sparse record that is available at this preliminary stage of litigation. Discovery, full development of the record, and comprehensive summary judgment procedures could perhaps lead to a result favorable to Universal, but its prospects on the merits are too speculative at this point to support preliminary relief.

19

Finding that no preliminary injunction should issue for the reasons stated above, the Court does not reach the contested issue of copying, the second element of Universal's copyright infringement claims.

<u>The Public Interest</u>

The fourth factor of the *Blackwelder* test is the public interest that may be involved in the dispute. While it is true that the public has a great interest in the protection of intellectual property rights and the prevention of infringement, it is also true that there is a strong public interest in free competition where legal rights are not invaded. Hence, the public interest at issue in this case is closely tied to the likelihood of success of the respective parties on the merits. As Universal has not shown a clear likelihood of success, neither has it shown that the public interest favors the grant of a preliminary injunction herein.

**Conclusion**

For reasons set forth above, **IT IS RECOMMENDED** that Universal's motion for a preliminary injunction (Pleading No. 10) be denied. Further, **IT IS ORDERED** that all objections to declarations and affidavits submitted in connection with Universal's preliminary injunction motion are **DISMISSED** as moot in view of the discussion above. *See* Pleadings Nos. 21, 22, 23. **IT IS FURTHER ORDERED** that Collezione's objections to Universal's reply brief and declarations are **DENIED**. *See* Pleading No. 29. Collezione's objection regarding Plaintiff's counsel's letter to the court is **GRANTED**. *See* Pleading

20

No. 31.  Finally, Collezione's supplemental brief (Pleading No. 42) is **STRICKEN** as not

provided for by the federal or local rules.


_____/s/ P. Trevor Sharp_____
United States Magistrate Judge



Date:  September 30, 2005