IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNIVERSAL FURNITURE INTERNATIONAL, INC.,<br><br>                               Plaintiff,<br><br>          v.<br><br>COLLEZIONE EUROPA USA, INC.,<br><br>                               Defendant. | Civil Action No. 1:04:CV00977 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S

## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

STATEMENT OF THE CASE ...................................................................................1

    A. Background of the Case .............................................................................1

STATEMENT OF FACTS ........................................................................................2

    A. The Parties .................................................................................................2

    B. Plaintiff's Accusation of Copyright Infringement ...................................2

    C. Creation of the GIC and EMC ..................................................................3

    D. Plaintiff's Copyright Registrations in the Grand Inheritance and
       English Manor Collections ........................................................................5

STATEMENT OF QUESTIONS PRESENTED ......................................................6-7

ARGUMENT ............................................................................................................7

    I.     STANDARD OF REVIEW...........................................................7

    II.    THE INDIVIDUAL DESIGN ELEMENTS ON THE GIC AND
          EMC ARE NOT COPYRIGHTABLE ....................................7

          A.    Each of the Individual Design Elements In the Collections
               Are In the Public Domain, With The Exception of A Single
               Bedpost Finial...............................................................9
          B.    Plaintiff's Failure to Identify All Of The Public Domain
               Sources Used In Creating The GIC and EMC Results In
               Evidentiary Prejudice To Collezione ......................................10

    III.   THE COMPILATIONS OF DESIGN ELEMENTS AD INDIVIDUAL
          DESIGN ELEMENTS IN THE GIC AND AMC ARE NOT
          CONCEPTUALLY SEPARABLE...........................................11

          A.    Plaintiff Has Not Satisfied Its Burden of Establishing
               Its Compilations Are Conceptually Separable ...........................12
               1.  Plaintiff Cannot Satisfy the *Pivot Point* Test.......................12
               2.  Plaintiff Cannot Satisfy the *Superior Forms* Test ...............14
          B.    The Individual Design Elements in the Public Domain
               Are Not Conceptually Separable ...........................................15

IV.    UNIVERSAL DOES NOT OWN THE COPYRIGHTS AT ISSUE IN
       THIS LITIGATION AND THUS LACKS STANDING TO PURSUE
       ITS COPYRIGHT CAUSES OF ACTION ........................................................... 15

       A.    Plaintiff Does Not Own the Copyrights in the Three-Dimensional
             Sculptural Design on the GIC and EMC ..................................................... 15
       B.    The Agreements Between Norman Heckler and Plaintiff Are Not
             Copyright Assignments ............................................................................. 16

V.     PLAINTIFF'S CLAIMS FOR UNFAIR AND DECEPTIVE TRADE
       PRACTICES AND UNFAIR COMPEITITION UNDER NORTH CAROLINA
       STATE LAW ARE PREEMPTED BY THE COPYRIGHT ACT ....................... 16

VI.    PLAINTIFF'S FALSE DESIGNATION OF ORIGIN CLAIM FAILS
       A MATTER OF LAW ACCORDING TO DASTAR V. TWENTIETH
       CENTURY FOX .................................................................................................. 17

VII.   PLAINTIFF IS NOT ENTITLED TO RECOVER LOST PROFITS FOR
       COPYRIGHT INFRINGEMENT CLAIMS ......................................................... 19

VII.   THE INDIVIDUAL AND COMPILATIONS OF SCULPTURAL
       DESIGNS ON COLLEZIONE'S FURITURE ARE NOT SUBSTANTIALLY
       SIMILAR TO PLAINTIFF'S ALLEGED COPYRIGHTED WORKS ................. 19

CONCLUSION.................................................................................................................. 20

APPENDIX A
APPENDIX B
APPENDIX C
APPENDIX D

# TABLE OF AUTHORITIES

Cases                                                                                                    Pages

*CCM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996)........8

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 2171 (1989)......15

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004)......................................8

*Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*,
243 F.Supp.2d 444, 450 M.D.N.C 2003). ....................................................................12, 13, 17

*Dastar v. Twentieth Century Fox*, 539 U.S. 23 (2003) ......................................................7, 17, 18

*Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n.1 (4th Cir. 1994) ....................................7

*Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 556-57 (9th Cir. 1990) ..........................................16

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211, 1217, 1223 (9th Cir. 1997) ...............................................................................8, 15

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 249 (1991)..........................................20

*Goebel Porzellanfabrik v. Action Indus., Inc.*, 589 F.Supp. 763, 767 (S.D.N.Y. 1984) .............16

*Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) ............................................................19

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 567,
105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)..........................................................................................19

*Herold v. Hajoca Corp.*, 864 F.2d 317 (4th Cir. 1988), *cert. denied*, 490 U.S. 1107 (1989).........7

*Iconbazaar, L.L.C.*, 308 F.Supp.2d at 637; ..................................................................................17

*JBJ Fabrics Inc. v. India Garments Inc*, 1993 WL 330464, *4 (S.D.N.Y. 1993). .....................19

*L. Batlin & Sons, Inc. v. Synder*, 536 F.2d 486, 489 (2nd Cir. 1976)....................................9, 10

*Kepner-Tregoe, Inc. v. Executive Development, Inc.*, 79 F.Supp.2d 474,
490-1 (D.N.J. 1999).........................................................................................................................11

*Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.*, 1997 WL 337465,
43 U.S.P.Q.2d 1218 (4th Cir. 1997). ......................................................................................12, 14

*Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle*, 356 F.Supp.2d 515, 528 (E.D. Pa. 2005) ...................................................................................................16

*Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 511 (4th Cir. 2002) ...................................................................................................19

*M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 437 (4th Cir. 1986)...................10

*Orsi v. Kirkwood*, 999 F.2d 86 (4th Cir. 1993) ...............................................................7

*Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 170 F.Supp.2d 828, 832, 833 (N.D.Ill. 2001), *rev'd*, 372 F.3d 913 (7th Cir. 2004)................................................12, 13

*Rosciszewski v. Arête Assocs., Inc.*, 1 F.3d 225, 229-30 (4th Cir. 1993) .....................17

*Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 688 (4th Cir. 1992) ....................8

*Sherry Mfg. Co., Inc. v. Towel King of Florida, Inc.*, 753 F.2d 1565, 1568-9 (11 Cir. 1985). ................................................................................................10, 11

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 493 (4th Cir.), *cert. denied*, 117 S.Ct. 53 (1996)..................................................12, 14

*Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996) .....................................................7, 15

*TrafFix Devices, Inc. v. Marketing Displays, Inc*, 532 U.S. 23, 29 (2001). ................20

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp*, 210 F.Supp2d 147, 163 (E.D.N.Y. 2002)........20

<u>Statutes</u>                                                                                                          <u>Pages</u>

Fed.R.Civ.P. Rule 56(e).......................................................................................................7
17 U.S.C. §101 .............................................................................................................11, 12
17 U.S.C. §102 ...................................................................................................................15
17 USC §103(b)...........................................................................................................10, 11
17 U.S.C. §106 ...................................................................................................................18
17 U.S.C. §201(a)...............................................................................................................15
17 U.S.C. §202 ...................................................................................................................16
17 U.S.C. §204(a)..........................................................................................................16, 18
17 U.S.C. §301(a)...............................................................................................................16
17 U.S.C. §410(c)..................................................................................................................7
N.C.G.S. §75-1.1.................................................................................................................17
*Nimmer on Copyright*, § 1.01[D][2], 1-86 (2005)...........................................................19
*Nimmer* §13.03[A] at 13-28.............................................................................................19

## STATEMENT OF THE CASE

### A.    Background of the Case

Plaintiff initiated this action against Defendant Collezione Europa U.S.A, Inc. ("Collezione") on October 22, 2004 alleging that Collezione's 20,000 and 20,200 furniture collections infringe Plaintiff's purported copyrights in its English Manor furniture collections ("EMC") and Grand Inheritance ("GIC") (See Appendix A, B, respectively). Prior to the instant action, Plaintiff asserted the GIC copyright registrations against at least five other companies, two of which resulted in litigation. Collezione seeks summary judgment, or partial summary judgment, on the basis that Plaintiff's furniture is not copyrightable, that Plaintiff does not own the copyrights, and that all other claims are pre-empted.

Seven months after filing its Complaint, Plaintiff unsuccessfully moved for a preliminary injunction to prevent Collezione from marketing, selling or making its 20,000 and 20,200 furniture collections (See Appendix C, D, respectively). This Court denied Plaintiff's preliminary injunction motion on the basis that there was no likelihood of success on the merits that Plaintiff owned a valid copyright. Specifically, this Court determined that since Plaintiff's copyrights were limited to the compilations of pre-existing design elements on furniture, the compilations were not conceptually separable from the furniture. During the Preliminary Injunction hearing, Plaintiff conceded that the infringement and, thus, copyrightability of the individual design elements is "not our case". (Hutton Ex. N, Transcript p. 20-22). Rather, Plaintiff's case is whether a compilation of pre-existing design elements on furniture is copyrightable and infringed.

Plaintiff appealed the denial of the Preliminary Injunction to the Court of Appeals for the Fourth Circuit. And, although it represented to this Court that the individual design elements were not at issue in this case, Plaintiff argued on appeal that this Court erred by not addressing infringement of the individual design elements. The Fourth Circuit agreed to expedite the appeal and heard argument on May 25, 2006, but has not yet issued its decision.

1

# STATEMENT OF THE FACTS

## A.   *The Parties*

Plaintiff imports and distributes furniture made overseas by independent Chinese manufacturers. (Hutton Ex. B, Hsu 24:24-25:12)[1]. Plaintiff incorporated around August 2001 and is owned by a holding company, Samson Investment Holdings, Co. (Hutton Ex. B, Hsu 22:11-25, 23:17-22). Plaintiff does not have any in-house designers or any manufacturing capabilities (other than assembling pre-made chair parts made in China). (Hutton Ex. B, Hsu 20:5-21:24). Instead, Plaintiff relies on independent Chinese manufacturers to make furniture, and samples thereof, it sells in the United States. (Hutton Ex. A, Russell 41:7-14; Ex. B, Hsu 24:24-25:12). However, Plaintiff does not have an exclusive supply agreement or any other type of written agreement with the Chinese manufacturers. (Hutton Ex. B, Hsu 51:11-14).

Collezione is in the business of selling high quality, affordable furniture at lower prices than others. (Hutton Ex. H, P. Frankel 45:2-17). Collezione imports and sells furniture and maintains operations both in the United States and abroad (i.e. China). (Id. at 34:19-35:23). Collezione is sensitive to charges that it infringes another's intellectual property rights, and takes allegations of infringement very seriously. Because of the nature of Collezione's business, once it is made aware of such claims, Collezione takes prompt action to investigate such charges. (Hutton Ex. G, L. Frankel 128:4-23).

## B.   *Plaintiff's Accusation of Copyright Infringement*

In October 2004, Collezione displayed a previous version of its 20000 and 20200 furniture, made by a Chinese manufacturer, Art Heritage International, at its private showroom during a furniture market. (Hutton Ex. G, L. Frankel 39:22-41:12). About a week after this market, Plaintiff first made contact with Collezione and protested the display of this furniture in Collezione's showroom. (Id. at 107:23-108:8).

Prior to this initial protest, Collezione was unaware that Plaintiff claimed any intellectual property rights in the furniture collections and, indeed, Plaintiff's furniture does not contain any copyright or

---

[1] The citations that reference supporting deposition testimony refer to the declaration and its exhibit containing the deposition transcript, followed by the deponents name and the page:line numbers of the transcript.

2

design patent notices. (Hutton Ex. B, Hsu 83:10-12). Collezione *never* made or distributed any furniture incorporating the original designs for the 20000 and 20200 Collections. (Hutton Ex. G, L. Frankel 40:24-41:15). In an act of good faith and an attempt to avoid litigation, Collezione took heed of Plaintiff's concerns and agreed not to proceed with *the original designs* for the 20000 and 20200 Collections. (Id. at 135:4-19). Collezione hired a designer to completely redesign and significantly change the decorative aspects of its 20000 and 20200 furniture collections. (Id. at 107:23-108:12). These new designs were advertised for the first time in the March 2005 edition of *Furniture Today* and look completely different than Plaintiff's furniture.

### C.      Creation of the GIC and EMC

Plaintiff did not design or manufacture any of the furniture in the GIC or EMC. Instead, Plaintiff hired the outside design firm of Norman Hekler Designs, Inc., specifically Steven Russell, to create two-dimensional drawings of the GIC and EMC and independent Chinese companies to make all of the furniture in the GIC and EMC, including all samples of the same. The initial samples of the GIC were made by Hong Kong Teakwood and the initial samples of the EMC were made by Tai Sheng Manufacturing Co., Inc. ("LacquerCraft"). (Hutton Ex. A, Russell 41:7-14; Ex. B, Hsu 13:18-25). Mr. Russell did not create any of the individual three-dimensional sculptures or compilations of three-dimensional sculptures found on the GIC and EMC because he does not have that specialized "skill" and is not a "master carver." (Hutton Ex. A, Russell 175:1-17).

With respect to the GIC, Plaintiff asked Mr. Russell to create a dining room set to go with a prior bedroom set called Royal Traditions, samples of which were previous displayed by Plaintiff well before the creation of the GIC at the International Home Furnishings Market. (Id. at 63:24-64:15, 76:10-18). In fact, some of the bedroom pieces for Royal Traditions and GIC are the same. (Id. at 80:11-21). Using a "trial-and-error process", Mr. Russell then "selected", "experimented", "arranged", "combined", and "incorporated" the individual public domain design elements into pieces of furniture, which eventually would become the Grand Inheritance furniture collection. (Hutton Ex. E, Russell Decl. ¶¶10-11).

3

Similarly, with respect to the English Manor collection, Mr. Russell was asked to design furniture with a "traditional appearance" that would appeal to consumers who like antiques. (Hutton Ex. E, Russell Decl. ¶¶18-19). Mr. Russell "selected" decorative elements from designs on furniture found in public domain source books, and then "adapted", "coordinated" and "arranged" in order to "incorporate" them into the overall EMC design. (Id. at ¶21).

Mr. Russell maintains a personal library of references including samples of old furniture designs as well as source books containing public domain designs he frequently uses in his day to day business of designing furniture. (Hutton Ex. A, Russell 81:15-82:14). These references, as well as others which he cannot now recall, were used by Mr. Russell for the design of the GIC and EMC. (Id. at 82:18-83:21, 85:17-86:16, 90:14-23, 108:14-21). In fact, Mr. Russell can only recall creating **one** individual design element in both the EMC and GIC, namely the bedpost finial in the GIC, without using such references. (Id. at 105:8-15, 116:9-19). The source books used by Mr. Russell contain illustrations of three-dimensional, carved, ornamental design elements (e.g. specific moldings, leaf carvings, pilasters, rosettes, scrolls, specific chair legs, arms and backs) on furniture, each individually in the public domain. (Hutton Ex. E, Russell Decl. ¶¶8-9). These design elements are virtually identical to the design elements in the GIC and EMC. (Hutton Ex. F, compare cols. A and B). Mr. Russell took the design elements from his references, sized them to fit on a particular location of the furniture (where they would not affect the functionality or useability of the furniture) and combined them with other design elements which he placed at different locations on the furniture. For example, in designing the chair for the GIC, Mr. Russell combined or "married" the back, arm and leg of different public domain references. (Hutton ¶4; Ex. A, Russell 98:14-99:20, 101:14-17, 152:22-153:14; Ex. J, Moser 35:5-36:17, 38:9-17). For the dresser in the GIC, Mr. Russell took the pilaster, i.e., corner, of a public domain dresser and combined it with a leaf carving from another reference, which he located between the top of the GIC dresser and the drawers. (Hutton Ex. A, Russell, 83:2-13). Mr. Russell followed the same process for the EMC. In other words,

4

with the exception of the aforementioned finial, each and every element within Plaintiff's furniture was copied or derived from other preexisting designs. (Id. at 116:9-19).

Because Plaintiff was denied a preliminary injunction by this Court and cannot show that a compilation of old design elements on furniture is conceptually separable, Plaintiff now argues that Collezione infringes the individual design elements on the GIC and EMC. However, there is no evidence in the record that these individual design elements are the original works of Mr. Russell. Mr. Russell could only testify that one individual design element was not copied or derived from a public domain design. When asked to specify each individual design element in the GIC and EMC which was designed without using a public domain reference, Plaintiff could not identify any such feature. (Hutton Ex. I, Resp.Int.No. 3). Thus, even after it has attempted to enforce the GIC copyright registration in at least three separate litigations, Plaintiff cannot not explain or identify what individual design elements therein are original. (Hutton Ex. B, Hsu 77:14-18, 78:22-79:7, 82:17-83:6). Despite signing the copyright applications that registered for the GIC and EMC, Plaintiff never even consulted or spoke with Mr. Russell about the copyright registration applications, or what features therein were originally created. (Id. at 76:4-14). Accordingly, Plaintiff and its expert, Thomas Moser, have stated only that the compilation, namely, the selection, coordination and arrangement of the individual design elements constitutes the copyrightable subject matter of the GIC and EMC. (Hutton Ex. L, Hsu 30:12-14, 21-22, 35:7-9, 22-25, 76:22-25; Ex. J, Moser 47:5-24, 90:5-12; Ex. M, Moser 20:19-25, 57:2-58:6, 79:20-81:2, 104:16-25).

### D.   *Plaintiff's Copyright Registrations in the Grand Inheritance and English Manor Collections*

Plaintiff applied for copyright protection for the entire GIC and EMC in two separate copyright registrations, paying the requisite $30 fee to the Copyright Office and submitting pictures of its entire furniture collections. Both the GIC and EMC copyright registrations are directed to three-dimensional sculptural designs on furniture and acknowledge the use of "public domain ornamental design," but neither one discloses any such preexisting designs. (Hutton Exs. C-D). Both registrations list Plaintiff as

5

the owner or copyright claimant by means of a written assignment from the listed author, Norman Hekler Design, Inc. Id. The Chinese manufacturers, Hong Kong Teakwood and LacquerCraft, are not mentioned in either of the registrations. Id.

Although the GIC was based upon public domain designs and Plaintiff's earlier Royal Traditions furniture, Plaintiff filed a copyright application for the GIC without indicating that the works were "derivative works". (Hutton Ex. C, Form VA). It was not until it commenced another litigation brought against another party, that Plaintiff supplemented its copyright application for GIC to designate the works as "derivative works", to identify the use of "public domain ornamental designs," and to explain that its copyright registration covers "decorative sculptural designs on furniture; adaptation of preexisting decorative designs; compilation of decorative designs on suites of furniture." (Hutton Ex. C, Form CA). The copyright registration for EMC allegedly covers the same type of features that the GIC registration allegedly protects. (Hutton Ex. D).

## STATEMENT OF QUESTIONS PRESENTED

1. Whether Plaintiff is entitled to copyright protection in the individual design elements on the GIC and EMC furniture when the only evidence in the record is that these elements were taken from and are substantially similar to the public domain sources used by its designer.

2. Whether Plaintiff's compilations of sculptural designs on the GIC and EMC furniture that depend on the specific location of the individual design elements on the furniture are conceptually separable from the furniture.

3. Whether Plaintiff has standing to assert copyright infringement of the GIC and EMC against Collezione when neither it nor its designer created any three-dimensional sculptural works.

4. Whether Plaintiff can seek lost profits based on speculation and assumptions that it would have sold its furniture to all of Collezione's customers without identifying a single Collezione customer.

5. Whether the U.S. Copyright Act preempts Plaintiff's claims for unfair and deceptive trade practices and unfair competition under North Carolina state and common law.

6. Whether Plaintiff's claim for false designation of origin fails as a matter of law according to the Supreme Court's decision in *Dastar v. Twentieth Century Fox*.

6

7.     Whether the designs on Collezione's furniture are considered substantially similar to the designs on the GIC and EMC alleged to be copyright protected by Plaintiff while taking into account the public domain designs used by Plaintiff's designer.

## ARGUMENT

## I.     STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact. The moving party on a motion for summary judgment has the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense or showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law.  Once the moving party has shown there is an absence of evidence to support the claims of the non-moving party, the party opposing summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record that is sufficient to support a jury verdict in its favor. *See* Fed.R.Civ.P. 56(e); *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir. 1993); *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988), *cert. denied,* 490 U.S. 1107 (1989).

In order to prevail on a claim of copyright infringement, a plaintiff has the burden of showing (1) ownership of a valid copyright to the work allegedly copied, and (2) defendant copied protected elements of that work. *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996).  Here, Plaintiff's failure to satisfy either of the above burdens results in a demise of its copyright causes of action, such that summary judgment is warranted. *Id.*

## II.    THE INDIVIDUAL DESIGN ELEMENTS ON THE GIC AND EMC ARE NOT COPYRIGHTABLE

The copyright registrations asserted by Plaintiff in this action entitle it to only a rebuttable presumption of validity. *See* 17 U.S.C. §410(c).  Validity will not be assumed if there is evidence in the record that casts doubt on Plaintiff's copyright rights. *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n.1 (4th Cir. 1994).  To rebut this presumption, Collezione need only offer some evidence or proof to

7

dispute or deny the prima facie evidence of validity. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

With respect to the individual design elements on the GIC and EMC furniture, Plaintiff's copyright registrations are directed to "decorative sculptural designs on furniture" and "adaptations of preexisting decorations designs." (Hutton Exs. C-D). Both of the copyright registrations for the GIC and EMC acknowledge use of "public domain ornamental designs." Id. Plaintiff's designer admits that <u>only</u> one of the individual design elements found on the GIC and EMC was designed without using a single specific public domain source as a reference. (Hutton Ex. A, Russell 116:9-19). Since prior public domain designs were used in creating the GIC and EMC designs, the presumption of validity is rebutted and the burden shifts to Plaintiff to prove it owns valid copyrights– the threshold issue for copyright infringement – by a preponderance of the evidence. *See Service & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 688 (4th Cir. 1992); *CCM Cable Rep., Inc. v. Ocean Coast Props, Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).

Plaintiff cannot satisfy this threshold burden of proving validity. First, with respect to the source books that Plaintiff's designer can remember using, the individual design elements on the EMC and GIC are nearly exact copies of the prior public domain designs found in those source books. (Hutton Ex. F, compare cols. A and B). Plaintiff's designer merely "adapted" or sized the elements to fit onto Plaintiff's furniture. (Hutton Ex. A, Russell 172:23-173:10; Ex. J, Moser 29:7-20). Therefore, Plaintiff does not own any valid copyrights in any of the individual design elements. Second, Plaintiff's designer cannot remember all of the prior public domain sources he used in creating the GIC and EMC furniture. (Hutton Ex. A, Russell 90:14-23, 108:14-21). As a result, Collezione cannot present a full and fair defense on the merits because of the unreliability of the memory of Plaintiff's designer.

8

**A.     Each of the Individual Design Elements In the Collections Are In the Public Domain, With The Exception of A Single Bedpost Finial**

The individual features are identical to or, at least, substantially similar to the public domain designs found in the source books used by Mr. Russell. (See Hutton Ex. F, compare cols. A and B). Mr. Russell, had access to a number of prior public domain sources and admits using three source books in creating the GIC, namely *Masterpieces of European Furniture: 1300-1840*, *Chairs Through The Ages*, and *Ornaments for Woodwork Furniture, Decorators Supply Corporation*. (Hutton Ex. e, Russell Decl. ¶9). Besides these three source books, Mr. Russell cannot recall what other source books he used in designing the GIC. (Hutton Ex. A, Russell 108:14-21). Mr. Russell further admits he used prior source books, including *Stately Homes,* in creating the ornamentation for the EMC. (Hutton Ex. E, Russell Decl. ¶19; Ex. A, Russell 90:14-21). However, Mr. Russell cannot recall what other source books he used in designing the EMC. (Hutton Ex. E, Russell Decl. ¶19; Ex. A, Russell 90:22-23). Mr. Russell also used chair legs and arms designed by others (Hutton Ex. J, Moser 35:5-36:17, 38:9-17), as well as "common", "classic", "period looking", "history book", "historical" design elements in designing both the GIC and the EMC, such as the chair backs, the ball and claw feet, bracket feet, oval veneer pattern and scroll designs, that have been used "for hundreds of years." (Hutton Ex. A, Russell 119:21-120:1, 136:5-13, 155:17-156:3; Ex. J, Moser 22:23-24:4, 88:2-15, 90:23-92:20).

A comparison of the individual design elements on the GIC and EMC furniture and the design elements found in the source books used by Mr. Russell clearly shows that he merely copied these public domain designs and applied them to particular locations on the furniture. (Hutton Ex. F, compare cols. A and B). In fact, Mr. Russell admits the only differences between the individual designs on the GIC and EMC and the public domain designs are in the "scale", "proportions," and "manipulations" to fit on a particular location on the furniture. (Hutton Ex. A, Russell 172:23-173:10). However, these trivial modifications in size or proportion do not result in copyrightable authorship. *L. Batlin & Sons, Inc. v.*

9

*Snyder*, 536 F.2d 486, 489 (2nd Cir. 1976); *Sherry Mfg. Co., Inc. v. Towel King of Fla., Inc.*, 753 F.2d 1565, 1568-69 (11 Cir. 1985).

Despite the fact that the individual design elements are in the public domain, Plaintiff argues that "the application" of these public domain design on the furniture make them original. (Hutton Ex. A, Russell 115:11-17, 120:25-121:9. 121:21-122:9, 160:9-13). Mr. Russell acknowledges that the acanthus leaves on the GIC and EMC were "drawn specifically for their location" on "whichever piece of furniture they're going on." (Hutton Ex. A, Russell 161:22-162:8). Mr. Russell also admitted that he found some carvings for a molding in GIC in a preexisting *Ornamental Products* catalog, and then "redrew one that scaled and fit our application." (Id. at 133:10-16, 148:8-12). However, these alleged "adaptations" of preexisting designs are nothing more that trivial changes to the size or proportion of to fit onto the furniture, which is not copyrightable.

**B.      Plaintiff's Failure to Identify All Of The Public Domain Sources Used In Creating The GIC and EMC Results In Evidentiary Prejudice To Collezione**

Copyright protection in a derivative work "extends only to the material contributed by the author of such work." 17 U.S.C. §103(b). The individual design elements cannot be protected in their entirety. In determining what aspects of the individual designs are protected, the court must "look to the new material added to the underlying material in the derivative work by the plaintiff." *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 437 (4th Cir. 1986). Plaintiff's designer can only recall designing one of the individual designs found on the GIC and EMC without referencing a prior public domain designs. (Hutton Ex. A, Russell 116:9-19). Also, since all of the prior source books used by Plaintiff's designer in creating the EMC and GIC are not known by Plaintiff or its designer (Id. at 90:14-23, 108:14-21), Plaintiff cannot satisfy its burden of establishing what was contributed to the preexisting designs by its designer. 17 U.S.C. §103(b). The only contribution to the preexisting designs is in the scale, proportion and manipulation of the public domain designs as applied to the GIC and EMC furniture (Id. at 172:23-173:10), which is not copyrightable. *L. Batlin*, 536 F.2d at 489; *Sherry*, 753 F.2d at 1568-69.

10

The record is overwhelming devoid of _any proof_ directed to the copyrightability of the individual design features. Plaintiff and its design expert cannot identify any expression in its furniture designs that was not also in the prior sources. (Hutton Ex. I, Resp. Int.Nos. 3-5; Ex. J, Moser 18:14-18). Instead, throughout discovery, Plaintiff asserted that it did not itself design the GIC and EMC, and therefore is "not in the best position to", for example, identify all original and creative design elements incorporated in the GIC and EMC or identify the copyrightable material contributed to the GIC and EMC, as distinguished from the preexisting material employed in the GIC and EMC. (Hutton Ex. I, Int.Resp.Nos. 3, 5). As a result, the Court cannot engage in a proper analysis of copyright validity, and Collezione cannot properly defend against such claims. Plaintiff's inability to identify all of the prior source books used in creating the EMC and GIC results in prejudice to Collezione. Evidentiary prejudice may arise from "a defendant's inability to present a full and fair defense on the merits because of . . . the unreliability of memories of long past events." _Kepner-Tregoe, Inc. v. Executive Dev., Inc._, 79 F.Supp.2d 474, 490-91 (D.N.J. 1999), where the Court determined that evidentiary prejudice existed because Plaintiff destroyed or lost the preexisting materials that would show what, if anything, is original and it could not produce a knowledgeable witness. Therefore, each of the individual designs on the GIC and EMC must be determined to be identical to the preexisting designs.

### III. THE COMPILATIONS OF DESIGN ELEMENTS AND INDIVIDUAL DESIGN ELEMENTS IN THE GIC AND EMC ARE NOT CONCEPTUALLY SEPARABLE

In addition to the individual design elements, the copyright registrations in the GIC and EMC also claim rights in compilations, namely the selection, coordination and arrangement of preexisting three-dimensional sculptural decorative designs. (Hutton Ex. C-D). Since the sculptural works at issue are furniture, i.e. useful articles, they are entitled to copyright protection only to the extent the designs are "conceptually separable" from the utilitarian aspects of the work. 17 U.S.C. §101. A compilation of individual design elements in the public domain that depend on the location of those elements on the furniture is not conceptually separable from the furniture. Since the individual design elements were

11

copied from the public domain, they too are not conceptually separable from the furniture because, separate from their application on the furniture, the individual design elements are the public domain designs and Plaintiff cannot claim rights to such designs. The test for conceptual separability is a completely *separate requirement* than the tests for originality and creativity under the Copyright Act.

## A. Plaintiff Has Not Satisfied Its Burden of Establishing Its Compilations Are Conceptually Separable

Sculptural design elements embedded in a useful article, *even if* they form a compilation, must satisfy the conceptual separability test in order to be copyrightable under the Copyright Act. 17 U.S.C. §101. Although there are several distinct variations of the conceptual separability test for useful articles, courts in this Circuit have focused on two tests:

1)   The *Pivot Point*[2] Test, as applied by the 4th Circuit in *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F.Supp.2d 444, 455 (M.D.N.C. 2003).

2)   The *Superior Forms*[3] test, as applied by the 4th Circuit in *Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.*, 1997 WL 337465 *2-3, 43 U.S.P.Q.2d 1218 (4th Cir. 1997).

These conceptual separability tests are not inconsistent with, or mutually exclusive of, one another. Regardless of which test is applied, the overall goal of the statutory requirement for conceptual separability is to distinguish "*applied art*", which is copyrightable, from "*industrial design*," which is not.[4] *See Pivot Point Int'l,* 170 F.Supp.2d at 832 (citation omitted).

### 1.   Plaintiff Cannot Satisfy the *Pivot Point* Test

The *Pivot Point* conceptual separability test set requires that (1) a sculptural work incorporated in the design of a useful article "stand on its own as a work of art traditionally conceived" and (2) the useful

---

[2] *Pivot Point Int'l, Inc. v. Charlene Products., Inc.,* 170 F.Supp.2d 828 (N.D.Ill. 2001), *rev'd,* 372 F.3d 913 (7th Cir. 2004).
[3] *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488 (4th Cir.), *cert. denied,* 117 S.Ct. 53 (1996).
[4] U.S. patent law - not the Copyright Act - is the appropriate vehicle for pursuing protection in an industrial design such as the overall design of a furniture collection, as is the case here. Plaintiff cannot use the Copyright Act to circumvent the more stringent patent laws, which require full disclosure of all relevant prior art (which Plaintiff has failed to provide in this case), simply by paying a $30 filing fee and filling out a 2-page Copyright Application.

12

article in which the sculptural work is embodied "be equally useful without it." *Pivot Point Int'l, Inc.,* 170
F.Supp.2d at 833 (emphasis added). Plaintiff cannot satisfy the first prong of the *Pivot Point* test.

The compilations of sculptural design elements on the GIC and EMC cannot "*stand on their own*"
because the compilations depend on the <u>arrangement</u> or specific locations of the designs <u>on</u> furniture.
Specifically, with respect to the GIC, Plaintiff's designer used a trial-and-error process, to select, sketch,
arrange, combine, and incorporate individual public domain design elements into pieces of furniture,
which eventually became the overall GIC design. (Hutton Ex. E, Russell Decl. ¶11). Similarly, with
respect to the EMC, the decorative elements were selected from designs on furniture found in the public
domain, and then adapted, coordinated and arranged into the overall EMC design. (Hutton Ex. E, Russell
¶21). Because the compilations, or "overall designs", depend on the arrangement and location of design
features on the furniture, the compilations cannot exist independently of, or be separated from, the
furniture. In other words, the arrangement and location of designs on furniture <u>is not possible</u> without the
furniture, and thus, the designs cannot "stand on their own."

Second, these compilations are not "works of art traditionally conceived", but rather were
designed to be furniture. Plaintiff specifically asked Mr. Russell to design a furniture collection to go
with a prior bedroom set called Royal Traditions. (Hutton Ex. A, Russell 63:24-64:15, 79:25-80:10), with
an ornate, opulent look, and to make "make it big and bold and covered up with carvings." (Hutton Ex. A,
Russell 79:25-80:10; Ex. E, Russell Decl. ¶6). Mr. Russell combined 18th and early-19[th] century English
and American forms to create a "stately" appearance, and included the arrangement of a large number of
ornamental carvings characteristic of the traditional, history book designs. (Hutton Ex. A, Russell 31:14-
23, 138-149; Ex. E, Russell Decl. ¶¶6, 9, 18-19). (Hutton Ex. E, Russell Decl. ¶¶18-19). In view of the
above evidence, Plaintiff cannot show that these compilations of decorative sculptural designs – copied
from the public domain - constitute a "work of art traditionally conceived." By claiming rights in the
compilation of design elements on furniture that depend on the location of those elements, Plaintiff is
attempting to protect industrial design, not applied art.

13

### 2. Plaintiff Cannot Satisfy The *Superior Forms* Test

The *Superior Forms* conceptual separability test requires that a design feature in a useful article be "capable or existing independently of the utilitarian aspects of the article" and be "created merely for its expressive form" independent of functional considerations. *Superior Form,* 74 F.3d at 493. Moreover, the article for which copyright is claimed must be "marketable to some significant segment of the community simply because of its aesthetic qualities." *Id.*

Plaintiff's compilations are not conceptually separable under the *Superior Forms* test because the creation of Plaintiff's compilations of preexisting design elements on its furniture was not done independent of functional considerations. As Plaintiff's own expert admits, furniture design is dictated by functional consideration, (Hutton Ex. J, Moser 54:10-16, 55:15-57:1), and the functionality of furniture is the "first and foremost" criteria in designing furniture. (Id. at 56:23-57:1). The compilations of sculptural design elements were created and "adapted" for the sole purpose of fitting on a piece of furniture, (Hutton Ex. A, Russell 17-25, 130-137), and the decision of when to arrange or locate a design element on furniture involves ensuring that the furniture still functions and is still useable as furniture. (Hutton Ex. J, Moser 56:23-57:1). Therefore, the compilations were not created "merely for [their] expressive form." Indeed, as previously recognized by the Fourth Circuit "most pieces of furniture are 'useful articles' rather than 'works of art,' and the "design of a unique, aesthetically pleasing [piece of furniture] cannot be separated from [its] utilitarian function." *See Magnussen,* 1997 WL 337465 *2-3. Finally, under the marketability test, there is no evidence that a significant segment of the community undoubtedly would purchase the GIC or EMC simply because of their aesthetic qualities, and not because their utilitarian function as furniture.

Plaintiff's compilations of design elements on furniture are not conceptually separable under either the *Pivot Point* or the *Superior Form* test for conceptual separability, and, thus, are noncopyrightable useful articles as a matter of law. Accordingly, Plaintiff cannot establish the validity of its copyrights in the compilation of individual design elements.

14

**B.** **The Individual Design Elements in the Public Domain Are Not Conceptually Separable**

The individual design elements on the GIC and EMC are not conceptually separable from the furniture because, as Plaintiff's designer and design expert admit, these public domain design cannot be looked at out of context, e.g. separate from their application on the furniture. Plaintiff's design expert, Mr. Moser acknowledges that "[n]o single element out of context, by itself, is an infringement, if, in fact, it comes from the public sector." (Hutton Ex. M, Moser 104:22-25). The individual design elements are not conceptually separable from the furniture on which they were applied because, separate from the furniture, they return to the same form as they exist in the public domain. Moreover, any adaptations of preexisting designs are due purely to functional considerations are not copyright protectable. *See Entm't Research,* 122 F.3d at 1223.

**IV.** **UNIVERSAL DOES NOT OWN THE COPYRIGHTS AT ISSUE IN THIS LITIGATION AND THUS LACKS STANDING TO PURSUE ITS COPYRIGHT CAUSES OF ACTION**

**A.** **Plaintiff Does Not Own The Copyrights in the Three-Dimensional Sculptural Design on the GIC and EMC**

To prevail on a claim of copyright infringement, a plaintiff must first prove that it owns a valid copyright. *Towler*, 76 F.3d at 581. The author of a copyrighted work "is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression is entitled to copyright protection." 17 U.S.C. §102; *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171 (1989). Consequently, the Chinese Manufacturers, who created the 3-D sculptures (Hutton Ex. A, Russell 41:7-14), not Plaintiff or Norman Hekler, are "considered the author[s]" of these works, and "own[s] all the rights comprised in the" respective copyrights. 17 U.S.C. §201(a). The copyright registrations at issue improperly list Plaintiff as the copyright claimant and Norman Hekler as the author of the 3-D sculptural works. There is no written agreement transferring ownership of the copyrights in the GIC from Hong Kong Teakwood to Plaintiff or in the EMC from Lacquercraft to Plaintiff.

15

Plaintiff's designer, Mr. Russell, and design expert, Thomas Moser, admit that the 3-D carvings created by the Chinese Manufacturers was not a trivial matter. It is not as simple as "[h]ere's the drawing. Here's the design. Good-bye." (Hutton Ex. J, Moser 82:12-83:8). The creation of a 3-D designs is "a different skill" that requires a "master carver to do it," which was a skill that Mr. Russell didn't have. (Hutton Ex. A, Russell 175:1-17). Because the Chinese Manufacturers added more than trivial creative effort in creating the 3-D furniture designs, the Chinese Manufacturers, are the authors of the 3-D designs on the furniture at issue and, thus, own the copyright therein. *See W. Goebel Porzellanfabrik v. Action Indus., Inc.,* 589 F.Supp. 763, 767 (S.D.N.Y. 1984); *Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle,* 356 F.Supp.2d 515, 528 (E.D. Pa. 2005).

### B. The Agreements Between Norman Hekler and Plaintiff Are Not Copyright Assignments

Alternatively, even if the Chinese Manufacturers do not own the 3-D designs, there does not exist a written agreement between Norman Hekler and Plaintiff that transfers any copyright rights in the GIC and EMC. 17 U.S.C. § 204(a); *see Effects Assoc., Inc. v. Cohen,* 908 F.2d 555, 556-57 (9th Cir. 1990). Plaintiff contends that it owns the copyrights in the GIC and EMC by means of a design agreement between Norman Hekler and a predecessor of Plaintiff named Universal Furniture Industries, Inc. ("Old Universal"). (Hutton Ex. K; Ex. B, Hsu 74:1-6). However, this agreement is insufficient to transfer copyright rights in designs. 17 U.S.C. §202. Moreover, if the agreement constitutes a sufficient copyright assignment, Plaintiff failed to produce any written agreement with Old Universal transferring the copyrights at issue in this action to Plaintiff. (Hutton Ex. L, Hsu 22:14-22). Without these written agreements properly transferring copyright rights, Plaintiff does not have standing to assert copyright infringement against Collezione.

### V. PLAINTIFF'S CLAIMS UNDER NORTH CAROLINA STATE LAW ARE PREEMPTED BY THE COPYRIGHT ACT

The U.S. Copyright Act preempts "equivalent" state law claims. 17 U.S.C. §301(a). An "equivalent" state law claim exists where: (1) the state law asserts rights "within the subject matter of

16

copyright," and (2) the state law creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." *Id.*; *Iconbazaar, L.L.C. v. America Online, Inc.,* 308 F.Supp.2d 630, 636 (M.D.N.C. 2004). The Fourth Circuit applies an "extra element" test to determine whether the state right claimed is equivalent to a right protected under Copyright Law. *Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225, 229-30 (4th Cir.1993). In other words, a state law claim is preempted unless an "extra element" is required that changes the nature of the action so that it is "qualitatively different" from a copyright infringement claim. *Id.*

In Counts III and IV of its Complaint, Plaintiff alleges that Collezione engaged in unfair and deceptive trade practices in violation of N.C.G.S. §75-1.1 and common law unfair competition by displaying and offering for sale furniture as though the furniture was Collezione's designs. The only factual basis asserted in support of these claims derives from "Collezione's display of the knockoff furniture in their showroom and the violation of our copyright" (Hutton Ex. B, Hsu 95:18-25, 99:3-6).

This Court has held that "[w]hile there may be extra elements of fraud or deceit in any given unfair trade practices claim, there are no additional elements *required* in order to state an unfair trade practices claim than there are required to state a copyright claim." *Iconbazaar, L.L.C.,* 308 F.Supp.2d at 637; *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.,* 243 F.Supp.2d 444, 450 (M.D.N.C. 2003). Therefore, the *required* "extra element" does not exist that changes the nature of Claims III and IV so that they are qualitatively different from a copyright infringement claim. *Id.*; *Rosciszewski,* 1 F.3d at 229-230. Accordingly, Plaintiff's claims for unfair and deceptive trade practices and unfair competition under North Carolina law are preempted by U.S. Copyright Law.

## VI.    PLAINTIFF'S FALSE DESIGNATION OF ORIGIN CLAIM FAILS AS A MATTER OF LAW ACCORDING TO *DASTAR V. TWENTIETH CENTURY FOX*

Plaintiff alleges in Count I of its Complaint that Collezione obtained numerous items of furniture within the GIC and EMC and then publicly displayed those items in its showroom during the October 2004 High Point furniture market, offered for sale and sold these items of furniture as though they were

17

collections and designs of Collezione. Plaintiff then asserts that Collezione's conduct constitutes a false designation of origin in violation of the Lanham Act. However, according to the Supreme Court's decision in *Dastar v. Twentieth Century Fox*, 539 U.S. 23 (2003), this claim must fail as a matter of law.

The right to copy or display creative works is governed exclusively by the domain of copyright (17 U.S.C. §106), not trademark or unfair competition. *Id.* at 33. In *Dastar*, the Supreme Court reiterated the importance in maintaining a distinction between copyright claims and Lanham Act claims, holding that "in accordance with the [Lanham] Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*)," the Lanham Act's prohibition on false designations of origin cannot be extended to false claims of authorship, invention or creation. *Id.* at 36. The Court stated that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 quoting, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001).

Allowing Plaintiff to proceed with its claim for false designation of origin would be precisely the over-extension of trademark related protection into an area traditionally occupied by copyright of which the Supreme Court cautioned in *Dastar*. *Id.* In the instant case, the gravamen of Plaintiff's claim rests in copyright infringement. Admittedly, the factual basis upon which Plaintiff's false designation claim rests is the "knocking off" of Universal's designs within its purported copyright registration. (Hutton Ex. B, Hsu 52:7-17). Thus, because Plaintiff's §43(a) claim emanates from the unauthorized copying and display of its alleged copyright-protected designs, any remedy available to Plaintiff stemming from Collezione's alleged conduct lies in copyright infringement.

Therefore, because Plaintiff's Lanham Act claim is a mere reiteration of its claims under the Copyright Act, according to *Dastar*, Plaintiff's false designation of origin claim under § 43(a) fails as a matter of law. Accordingly, Collezione requests that summary judgment be granted in its favor with respect to Count I of Plaintiff's complaint.

18

## VII. PLAINTIFF IS NOT ENTITLED TO RECOVER LOST PROFITS FOR COPYRIGHT INFRINGEMENT CLAIMS

Plaintiff seeks to recover lost profits for its copyright infringement claims. In order to recover lost profits in a copyright action, the plaintiff must show the existence of a causal connection between the infringement and a loss of revenue. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 567, 105 S.Ct. 2218, 2234, 85 L.Ed.2d 588 (1985). However, the Copyright Act does not allow the recovery of damages based on undue speculation. *Nelson-Salabes, Inc. v. Morningside Dev., LLC,* 284 F.3d 505, 511 (4th Cir. 2002); *Hamil Am. Inc. v. GFI,* 193 F.3d 92, 108 (2d Cir. 1999); *JBJ Fabrics Inc. v. India Garments Inc.,* 1993 WL 330464, *4 (S.D.N.Y. 1993).

In seeking lost profits, Plaintiff relies entirely on speculation in making the blanket assertion that Collezione's sales equal Plaintiff's lost profits. (Hutton Ex. B, Hsu 56:17-24). Plaintiff *assumes* it would have made all the sales that Collezione made of the 20000 and 20200 collections because every customer that Collezione sold to "are a potential customer of Universal because we are in the same industry and the furniture is basically the same." (*Id.* at 56:25-58:3). However, Plaintiff cannot identify a single customer it lost because of Collezione. (*Id.* at 57:8-10, 58:4-20). Plaintiff has no other proof in support of lost profits other than its assumptions. Accordingly, since Plaintiff's theory of lost profits rests purely upon undue speculation, Plaintiff is not entitled to recover lost profits for copyright infringement.

## VIII. THE INDIVIDUAL AND COMPILATIONS OF SCULPTURAL DESIGNS ON COLLEZIONE'S FURNITURE ARE NOT SUBSTANTIALLY SIMILAR TO PLAINTIFF'S ALLEGED COPYRIGHTED WORKS

A comparison of the individual design elements on Plaintiff's furniture with the public domain designs found in the source books identified by Plaintiff, clearly show that Plaintiff's individual designs are virtually identical to the preexisting designs. (Hutton Ex. F, compare cols. A and B). Under these circumstances, the scope of Plaintiff's copyright protection, if even entitled to any protection at all, is "thin." Thin copyright protection is appropriate where works reflect "scant creativity." 4 *Nimmer* §13.03[A] at 13-28. Scant creativity exists when a work is composed of elements in the public domain,

and it is only the organization of those elements that is protectable. *See Feist Publ'n, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349 (1991). Since the scope of Plaintiff's compilations of designs on furniture is "thin", then the differences between Plaintiff's furniture and the accused Collezione furniture become even more significant. *See Well-Made Toy Mfg Corp.v. Goffa Int'l Corp.,* 210 F.Supp.2d 147, 163 (E.D.N.Y. 2002). With only "thin" copyright protection, a comparison of the individual designs found on the accused Collezione furniture with the individual design claimed to be copyrighted by Plaintiff clearly shows that there is no copyright infringement. (Hutton Ex. F, compare cols. A and C). Since the individual design elements do not look substantially similar, then the compilations of these designs also cannot be considered infringement of Plaintiff's copyrights.

## CONCLUSION

For the foregoing reasons, all of Plaintiff's causes of action in Plaintiff's Complaint should be dismissed because none of the patents in suit are infringed by any of Collezione's furniture.

Dated: June 23, 2006                    Respectfully submitted,

/s/ Nicholas Mesiti
Harry Gordon
N.C. State Bar Number 5628
Gordon Law Offices
Foundation Place, Suite 300
Greensboro, NC 27401
Telephone: 336-275-9910
Facsimile: 336-275-8797

Nicholas Mesiti
Brett M. Hutton
HESLIN ROTHENBERG FARLEY & MESITI P.C.
5 Columbia Circle
Albany, NY 12203
Telephone: (518) 452-5600
Facsimile: (518) 452-5579

*Attorneys for Defendant*