IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNIVERSAL FURNITURE, ) | |
| INTERNATIONAL, INC., ) | |
|              ) | |
|       Plaintiff ) | |
|              ) | |
|       v. ) | 1:04CV00977 |
|              ) | |
| COLLEZIONE EUROPA USA, INC., ) | |
|              ) | |
|              ) | |
|       Defendant ) | |

MEMORANDUM OPINION

TILLEY, District Judge

On February 6, 2007, Magistrate Judge P. Trevor Sharp filed his Recommendation [Doc. # 162] that Collezione Europa USA, Inc.'s ("Collezione") Motion for Summary Judgment [Doc. # 99] be granted in part dismissing Universal Furniture International, Inc.'s ("Universal") claim for copyright infringement and that Universal's Motion for Summary Judgment [Doc. # 87] be granted in part dismissing substantially all of the counterclaims asserted by Collezione. On February 23, 2007, Universal and Collezione both timely filed objections to the Recommendation.

The Court has conducted a *de novo* review of those issues to which an objection was made and, for the reasons set forth below, will adopt the Recommendation of the Magistrate Judge in part and reject the Recommendation

in part.

I.

Universal and Collezione are competing furniture manufacturers. In this copyright infringement action, Universal contends that two Collezione furniture lines violate Universal copyrights in its Grand Inheritance and English Manor collections. Collezione asserts that Universal's copyrights are invalid because the design elements of the Grand Inheritance and English Manor furniture are merely copied from the public domain.

In addition to the copyright infringement issue, Universal has also asserted a Lanham Act claim for "reversing passing off." This claim arises from the October 2004 furniture market during which Universal claims that the Collezione showroom actually displayed pieces from Universal's English Manor collection as the Collezione 20200 collection. In addition, at the October 2004 market, Collezione showed a 20000 collection that Universal claims was strikingly similar to its Grand Inheritance collection.

Collezione concedes it intended to sell pieces substantially similar to Universal's two collections before becoming aware that the collections were copyrighted. To avoid a copyright infringement suit, Collezione agreed not to develop or market its 20000 and 20200 collections and redesigned the collections. Settlement talks continued until March 2005, when Collezione began marketing its redesigned collections. Although Collezione's designer changed various design

elements, Universal contends that the redesigned collections are still substantially similar to its copyrighted English Manor and Grand Inheritance collections.

II.

Universal objects to the Recommendation of the Magistrate Judge that would dismiss its copyright infringement claim. In particular, Universal asserts that the Recommendation errs in its application of the "conceptual separability" test that has been adopted by the Fourth Circuit.

A.

The doctrine of conceptual separability stems from the distinction drawn by the Copyright Act between utilitarian objects and decorative sculptural objects. This distinction is based on two provisions contained in the definitions section of the Copyright Act at 17 U.S.C. § 101. The first provision notes that copyright protection is available for "pictorial, graphic, and sculptural works," which are defined as:

> two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; *the design of a **useful article**, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article*.

17 U.S.C. § 101 (emphasis added). In addition, section 101 provides that a

3

"useful article" is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'" Id.

While useful articles themselves are not generally entitled to copyright protection, the *design* of a useful article may be entitled to copyright protection "only if, and only to the extent that, such design incorporates pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Id. Two phrases in this statute – "can be identified separately from" and "capable of existing independently of" – give rise to the doctrine of "conceptual separability." In short, copyright protection is available when "conceptual separability exists between the material sought to be copyrighted and the utilitarian design in which that material is incorporated." Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 922 (7th Cir. 2004); Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d 411, 418 (2d Cir. 1985) (explaining that "Congress has explicitly refused copyright protection for works of applied art or industrial design which have esthetic or artistic features that cannot be identified separately from the useful article").

In determining whether conceptual separability exists, the Fourth Circuit has adopted the "process oriented" test utilized by the Second Circuit in Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142 (2d Cir. 1987). See Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 494 (4th

4

Cir. 1996); Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., No. 06-1144, 2006 WL 2491201, at **4 (4th Cir. 2006). Under this test, "[w]here design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists." Brandir, 834 F.2d at 1145; Superior Forms, 74 F.3d at 494.

The Recommendation cites Superior Forms, considers the testimony of the designer of the Universal furniture at issue, and concludes that the design elements on the furniture at issue were not conceptually separable. The Magistrate Judge determined that the designer's "desire for functionality overshadows any artistic intent" and concluded that "no reasonable trier of fact could conclude that the design elements or compilation of elements contained in Universal's Grand Inheritance and English Manor lines are separable from the articles' functionality." [Doc. # 162 at 11].

In its Objections to the Recommendation, Universal has identified evidence in the record that the designer, Stephen Russell of Norman Hekler Designs, exercised significant artistic judgment independent of functional considerations. In particular, in his deposition, Mr. Russell testified in detail regarding his design process. Before he begins to design a collection, Mr. Russell conducts research by reviewing furniture resource books, looking at magazines and visiting furniture stores. [Russell Dep. at 17-19]. Once the research process is complete, Mr. Russell begins sketching by hand, and always sketches dressers first. [Russell Dep. at 20]. As

5

he describes it, "it's just a creative process where you're trying this wiggle or that wiggle or this drawer breakup, another drawer breakup, and you just keep working it back and forth until you come to something that is pleasing to the eye." [Russell Dep. at 20-21].

With respect to decorative elements on the furniture, Mr. Russell explained that the goal of the Grand Inheritance collection was to "make it big and bold and covered up with carvings." [Russell Dep. at 80]. In creating particular decorative elements, Mr. Russell explained that he might use his research "as the inspiration and the beginning point for the molding that [he] drew." [Russell Dep. at 87]. However, not all of the decorative items in the collections were created from Mr. Russell's research. In creating some ornaments for the Grand Inheritance collection, Mr. Russell explained, "you wouldn't waste the time searching books and books to try to find a reference. You would just draw it." [Russell Dep. at 105].

As the Recommendation notes, some of Mr. Russell's design decisions were tempered by the need to create a functional piece of furniture. [See Russell Dep. at 136-37 (agreeing that he would not put a carving in a location where it would not allow a drawer to open)]. However, there are numerous instances in Mr. Russell's testimony in which functionality was not a consideration. For example, Mr. Russell testified as follows: "I liked the acanthus [leaf] on the arm, and that's why I put it there. It was something different . . . "; and "that's a beautiful place

6

to put a carving," in explaining the location of a particular design element. [Russell Dep. at 121, 135-36].

After conducting a *de novo* review of the evidence in the record and applying the process oriented test for conceptual separability adopted by the Fourth Circuit in Superior Forms, it is determined that Universal has presented sufficient evidence that would a allow a reasonable fact finder to conclude that the design elements or compilation of elements can be identified as reflecting Mr. Russell's artistic judgment exercised independently of functional influences. As such, the Recommendation that Collezione's summary judgment motion should be granted on the grounds of conceptual separability is rejected, and Collezione's motion for summary judgment on the issue of conceptual separability is DENIED.

III.

Because the Recommendation dismissed Universal's copyright claim on the grounds that the designs were not conceptually separable, the Magistrate Judge did not address Collezione's arguments that Universal does not own the copyrights at issue or that the designs are not sufficiently original to merit copyright protection. These arguments will be addressed in turn.

A.

Collezione asserts that the Chinese manufacturers who actually produced the three dimensional pieces of furniture are the owners of the copyright for the

7

furniture and that there is no written agreement transferring ownership of the copyright from the Chinese manufacturers to Universal. This argument is without merit.

The undisputed evidence in the record demonstrates that Mr. Russell produced very detailed designs by hand, some of which were then scanned into a computer, and that these designs contained precise measurements for all aspects of the furniture. The undisputed evidence further shows that the Chinese manufacturers created the three-dimensional pieces of furniture based on Mr. Russell's designs. Even if the Chinese manufacturers added sufficient creative effort in the execution of the two-dimensional designs to warrant separate copyright protection of their work, any new material would be entitled to its own copyright as a derivative work, and the copyright for the derivative work would not destroy the copyright of the drawings. See W. Goebel Porzellanfabrik v. Action Indus., Inc., 589 F. Supp. 763, 767 (S.D.N.Y. 1984) (explaining that three-dimensional figures were derivatives of two-dimensional sketches and noting that it is "one of the basic principles of copyright law that derivative works can be copyrighted and that such works and their copyrights exist independently of the original works and whatever copyrights protect them"). Moreover, the Copyright Act clearly provides that the copyright in a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work and does not imply any exclusive right in

8

the preexisting material." 17 U.S.C. § 103(b).

9

B.

In addition, Collezione asserts that even if Mr. Russell were entitled to a copyright for his designs, Universal cannot establish that he transferred that copyright to Universal. Collezione asserts that Universal has three "gaps" in its title chain. In particular, Collezione asserts that (1) there is no valid assignment of the copyright from the designer to Universal's predecessor, Universal Furniture Industries, Inc.; (2) there is no written assignment between Universal Furniture Industries, Inc. and Universal Furniture Limited; and (3) there is no signed written assignment between Universal Furniture Limited and the plaintiff Universal. Through various briefs and a motion to supplement the summary judgment record, Universal has presented sufficient evidence to defeat Collezione's motion for summary judgment on the issue of ownership.

With respect to Collezione's first argument, Universal asserts that the designs were created pursuant to one of two Design Service Agreements between Norman Hekler as the designer/design firm and either Universal or Universal Furniture Industries, Inc. as the manufacturer. The 1994 Design Service Agreement[1] provided that any designs accepted by the manufacturer became the exclusive property of the manufacturer. Collezione asserts that the 1994

---

[1] There is some dispute between the parties regarding whether the collections at issue were created under the 1994 Design Services Agreement or under a subsequent agreement. Collezione asserts that both collections were created under the 1994 Agreement. For purposes of Collezione's motion for summary judgment, the 1994 Agreement will be considered.

10

Agreement is insufficient to confer copyright rights, citing section 202 of the Copyright Act, which provides that "[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material work in which the work is embodied." 17 U.S.C. § 202.

Collezione appears to be drawing a distinction between ownership of the furniture designs, which it asserts may have been transferred under the 1994 Design Service Agreement, and ownership of the copyrights associated with those designs, which it asserts was not transferred under the Design Service Agreements. In essence, Collezione asserts that the 1994 Agreement does not transfer copyrights because it does not contain the word "copyright." This position has been rejected by other courts. See Armento v. Laser Image, Inc., 950 F. Supp. 719, 733 (W.D.N.C. 1996) ("That the agreements omit the word "copyright" is not dispositive, for their wording clearly transfers the very copyrights [the plaintiff] claims were infringed . . . ."); see also Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir. 1992) (noting that while the agreement between the parties "does not mention the word 'copyright' it's wording leaves little doubt" that the parties intended to transfer to copyrights at issue). At this point in the proceedings, Universal has presented sufficient evidence to defeat Collezione's motion for summary judgment as to this "gap" in the chain of title.

As to Collezione's second argument, Universal has presented a corporate

11

document filed with the North Carolina Secretary of State indicating that Universal Furniture Industries, Inc. merged into and became a part of Universal Furniture Limited in December 1997. The merger of Universal Furniture Industries, Inc. into Universal Furniture Limited precludes the entry of summary judgment with respect to Collezione's argument regarding the second "gap" in the chain of title.

Finally, Magistrate Judge Sharp allowed Universal's motion, over Collezione's objection, to supplement the summary judgment record with a signed Asset Purchase Agreement in which Universal Furniture Limited conveyed all copyrights to Universal. For purposes of summary judgment, the Asset Purchase Agreement effectively satisfies the third "gap" identified by Collezione. As such, Collezione's motion for summary judgment on the issue of ownership is DENIED.

C.

In its summary judgment brief, Collezione has also asserted that Universal's furniture designs are not copyrightable because Mr. Russell "merely copied" his designs from elements in the public domain and applied them to locations on the furniture. It is well-established that "[t]o qualify for copyright protection, a work must be original to the author." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). In determining whether a work satisfies this originality requirement, the Supreme Court explained that the "vast majority of works make the grade quite easily, as they possess some creative spark." Id.

In support of its argument that Mr. Russell simply copied design elements

12

from the public domain, counsel for Collezione has created side-by-side comparisons containing photographs of pieces of furniture from the Universal collections at issue and photographs of pieces of furniture representative of the public domain. Although there are similarities between the Universal collection pieces and the items to which they are compared, there are certainly sufficient differences that it cannot be said, as a matter of law, that the Universal designs lack the "creative spark" necessary for copyright protection.

Moreover, as discussed in detail above, Universal has presented sufficient evidence, to defeat summary judgment, that Mr. Russell exercised creativity in designing the ornamental designs on the furniture collections at issue. In particular, with respect to the heavy moldings and ornamentation that Universal asserts makes its collections unique, Mr. Russell testified that "[a]lmost every ornament that we had drawn in that group is distinctly different from anything that I know that exists." [Russell Dep. at 172]. Collezione's motion for summary judgment on the issue of originality is DENIED.

## IV.

Collezione has filed objections to the portion of the Recommendation that would deny Collezione's Motion for Summary Judgment as to Universal's reverse passing off claim under the Lanham Act and state law claims for unfair and deceptive trade practices and unfair competition. In addition, Collezione objects to the portions of the Recommendation that would dismiss Collezione's counterclaims

13

against Universal pursuant to Universal's Motion for Summary Judgment.

A.

In support of its objections regarding the Lanham Act claim, Collezione asserts (1) this Court lacks jurisdiction to hear these claims because there has been no showing that the display of the furniture in Collezione's showroom impacted interstate commerce; (2) Universal's reverse passing off claims and state law claims are preempted by Universal's copyright infringement claim; (3) Universal failed to establish a reverse passing off claim; and (4) the Recommendation erroneously extended Universal's claims beyond the allegations in the Complaint.[2]

As to Collezione's first argument, the record contains evidence that Collezione made numerous sales of its furniture, to customers outside North Carolina, based on its display at the High Point furniture market. In addition, Collezione is a New Jersey based manufacturer who was displaying furniture at the High Point market. Collezione's argument that interstate commerce is not involved is without merit.

---

[2] Universal asserts that some of these arguments have been waived because they were raised for the first time in an objection to a Recommendation. However, the Fourth Circuit has explicitly held that district courts cannot limit review of magistrate judge recommendations through application of waiver principles, noting that "the party entitled to *de novo* review must be permitted to raise before the court any argument as to that issue that it could have raised before the magistrate." United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992). The Fourth Circuit based its decision on interpretation of the Federal Magistrates Act, 28 U.S.C. §§ 631-639, and expressed concern that "any other conclusion would render the district court's ultimate decision at least vulnerable to constitutional challenge." Id.

14

In support of its second argument, Collezione reiterates the arguments from the summary judgment briefs that Universal's Lanham Act claims are preempted by its claims under the Copyright Act pursuant to Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). In Dastar, the Supreme Court held that the Lanham Act did not allow a plaintiff to bring a claim for failing to give credit for copyright material because such a claim was preempted by the Copyright Act. Id. at 31. The Court noted, however, that the Lanham Act "claim would undoubtedly be sustained if [the defendant] had bought some of [the plaintiff's products] and merely repackaged them as its own." Id. at 31. Universal's allegations with respect to Collezione's conduct at the October 2004 furniture market is the scenario described by the Supreme Court in Dastar that would give rise to a Lanham Act claim. Specifically, Universal has not alleged merely that Collezione copied its designs; rather Universal alleges, and has presented evidence to support the allegations, that Collezione acquired *actual* pieces of Universal furniture and "began displaying, offering for sale, and selling these items of furniture as though they were the collections and designs" of Collezione. [Doc. # 1, ¶ 20]. Universal's Lanham Act claim is not predicated solely on failure to give credit for a design and thus is not preempted by its infringement claim under the Copyright Act.

Third, Collezione asserts that the Recommendation improperly goes beyond the Complaint when considering evidence regarding a sticker with the letters "LC" on the furniture in the Collezione showroom during the October 2004 furniture

15

market.  Collezione asserts that Universal did not include allegations regarding the "LC" sticker in the Complaint and that it is improper for Universal to include this new allegation at the summary judgment stage.

In the Complaint, Universal asserted a Lanham Act claim based on allegations that in October 2004, Collezione displayed pieces of Universal furniture in the Collezione Showroom.  The evidence regarding the "LC" sticker has been offered in support of this claim.  In particular, there is evidence in the record that "LC" refers to furniture manufacturer Laquercraft and that Universal contracted with Laquercraft to produce the Universal lines of furniture in question.  Thus, evidence regarding the "LC" sticker is not a new allegation but is factual evidence offered in support of a claim that was alleged in the Complaint.  The Recommendation properly considered this evidence and the objection is without merit.

The remaining objections raised by Collezione concern whether the Recommendation properly concluded that Universal had presented sufficient evidence to make out each of the elements of the Lanham Act claim and whether the Recommendation properly denied Collezione's summary judgment motion regarding Universal's state law claims. After conducting a *de novo* review of the evidence in light of these objections, it is determined that the Recommendation of the Magistrate Judge regarding the Lanham Act claim should be adopted, and Collezione's motion for summary judgment on the Lanham Act claim is DENIED.

16

Furthermore, the Recommendations of the Magistrate Judge regarding Universal's state law claims should be adopted, and Collezione's motion for summary judgment on Universal's state law claims is DENIED.

B.

Collezione also asserts that the Recommendation erred by dismissing its eighth counterclaim for unfair methods of competition without comment or analysis. In support of its unfair competition claim, Collezione asserts that Universal acted improperly by obtaining invalid copyright registrations, making false statements to the Copyright Office, and accusing Collezione of infringing Universal's copyrights even though the Collezione furniture "looks completely different" than the Universal designs at issue. Although the Recommendation did not specifically address the unfair competition claim, it is clear that the Magistrate Judge considered all of the evidence that Collezione proffered in support of that claim when granting Universal's summary judgment motion and dismissing Collezione's other counterclaims. For example, the Recommendation found that Collezione had failed to proffer sufficient evidence to support a claim for copyright misuse and had failed to produce evidence sufficient to create a factual issue in support of its claim that Universal committed fraud on the copyright office. Finally, although Collezione claims that Universal made bad faith allegations of copyright infringement in order to stifle competition, there is no evidence in the record to support a claim that Universal has acted in bad faith.

17

Having conducted a *de novo* review of the objections in light of the Recommendation, it is determined that, for the reasons stated above and for the reasons stated in the Recommendation, the portion of the Recommendation granting Universal's motion for summary judgment as to counterclaims 1,3 and 4-11 should be adopted. Universal's motion for summary judgment as to claims 1,3 and 4-11 is GRANTED. The second counterclaim seeking a declaratory judgment of non-infringement remains for trial.

V.

Collezione recently filed a Motion to Strike Jury Demand [Doc. #165] asserting that Universal's only remaining claims are equitable in nature for which there is no right to trial by jury. [Doc. ## 165, 166]. In response, Universal asserted that it was "entitled to a jury trial for the claims stated in the Complaint" but agreed that the matter could be tried by the Court as a bench trial. [Doc. # 169]. As such, the Motion to Strike Jury Demand [Doc. # 165] is GRANTED.

VI.

Thus, for the reasons discussed above and for the reasons set out in the Recommendation, Collezione's Motion for Summary Judgment [Doc. # 99] is DENIED, and Universal's Motion for Summary Judgment [Doc. # 87] is GRANTED IN PART dismissing Collezione's Counterclaims 1, 3 and 4-11. In addition, Collezione's Motion to Strike Jury Demand [Doc. # 165] is GRANTED.

This the day of April 26, 2007

   /s/ N. Carlton Tilley, Jr.
United States District Judge