IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



| | |
|---|---|
| UNIVERSAL FURNITURE INTERNATIONAL, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 1:04CV977 |
| COLLEZIONE EUROPA, USA, INC. | ) ) ) |
| Defendant. | ) |

## **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER REGARDING DAMAGES**

OSTEEN, Jr., District Judge.

This matter is now before the court for a final determination and award of damages. This court incorporates by reference the Findings of Fact and Conclusions of Law dated September 14, 2007 (Doc. 203) and the Permanent Injunction and Order dated November 30, 2007 (Doc. 214).

### **PROCEDURAL HISTORY**

This case was bifurcated into two parts: the first part proceeded as a bench trial in order to determine liability, and the second part proceeded as a hearing to calculate any resultant damages. The Honorable William L. Osteen, Sr. presided over the bench trial from May 14 - 18, 2007. On September 14, 2007, Judge Osteen, Sr. entered his Findings of Fact and Conclusions of Law. (Doc. 203.) Those findings of fact and conclusions of law resolved all liability issues but reserved a ruling on damages,

thus creating a bifurcation. Subsequently, Judge Osteen, Sr.
retired and this case was assigned to the undersigned court.

In his Findings of Fact and Conclusions of Law, Judge
Osteen, Sr. determined that Defendant, Collezione Europa USA,
Inc. ("Collezione" or "Defendant"), was liable to Plaintiff,
Universal Furniture International, Inc. ("Universal" or
"Plaintiff"), on the following grounds: (1) false
designation/reverse passing off of Plaintiff's furniture in
violation of the Lanham Act; (2) infringement of Plaintiff's
copyright in violation of the Copyright Act; and (3) reverse
passing off of Plaintiff's furniture in violation of North
Carolina's Unfair and Deceptive Trade Practices Act. (Findings
of Fact and Conclusions of Law (Doc. 203) at 38.) Following a
finding of liability, Plaintiff moved for the entry of a
permanent injunction (Doc. 204) and Collezione responded by
submitting a motion to stay any injunction pending appeal (Doc.
206). The court granted Plaintiff's injunction and denied
Collezione's request for a stay (Docs. 213, 214).[1] Collezione
subsequently filed a petition under Title 11 of the United States
Code in the United States Bankruptcy Court for the District of
New Jersey ("Bankruptcy Court"). (See Doc. 225.) On April 10,

---

[1] Collezione filed a notice of appeal to the Fourth Circuit
Court of Appeals contesting this court's entry of a permanent
injunction. (Doc. 215.) The Fourth Circuit denied Collezione's
motion for stay of the injunction. (Doc. 217.)

2008, the Bankruptcy Court lifted the automatic stay for the purpose of permitting this court to conduct a hearing on Universal's damages. (Doc. 226-2.) The hearing on damages took place on June 4, 2008. The notice of hearing advised both parties that they could present evidence and argument. (Doc. 227.) Collezione chose to present argument only and did not present any additional evidence.

At the June 4, 2008 hearing ("the Hearing"), this court received arguments from both parties, as well as their damages calculations based on the evidence presented at trial. (See Trial Tr., May 14-18, 2007 (Docs. 189-92); Hr'g. Tr. June 4, 2008.) Plaintiff presented evidence of its damages and Collezione's gross profits through, among other evidence, Plaintiff's Exhibits 29, 31-34, 49, 50, 52, and 56. Collezione presented evidence related to damages and gross and net profits through, among other evidence, the testimony of Paul Frankel and Defendant's Exhibits 19-30. During the Hearing, Plaintiff submitted a document (Pl.'s Ex. 56) containing its mathematical calculation of Collezione's gross profits related to Collezione's violation of the Copyright Act and Lanham Act. Plaintiff based its calculations on the trial evidence, adding together all sales Collezione made to customers who originally ordered furniture between October 1, 2004 and April 1, 2005.

-3-

At the close of the Hearing, Defendant was given until June 13, 2008 to file any responses or objections to Plaintiff's calculations. Defendant raised no objections. Thereafter, this court directed Plaintiff to resubmit its calculations of gross profits and damages under the Lanham Act for the period of October 1, 2004 through January 26, 2005. (Text Order, June 25, 2008.) This court gave Defendant until June 30, 2008 to submit its own calculation or file any objections to Plaintiff's calculation. (Id.) Defendant filed a response. (Doc. 233.) This court rejected Defendant's recalculation as set forth in the exhibit because it was an unverified spreadsheet presented during discovery that was not based on evidence presented at trial. (Order, July 3, 2008 (Doc. 236).) Consequently, Defendant was then ordered to provide a summary of the total sales and itemized costs associated with each of the items previously determined to be in violation of the Lanham Act and Copyright Act. (Id.) This court further ordered Defendant to base its calculations on evidence presented at trial, and to organize its calculations by itemizing each category of cost. (Id.) As part of this order, Plaintiff received ten days to review Defendant's calculations and submit any objections. (Id.) Defendant submitted a response to the court's order, along with three spreadsheets attached as exhibits. (Doc. 237.) Plaintiff submitted objections to

-4-

Defendant's submission attacking Defendant's methodology. (Doc. 238.)

This court notes that it did not sit as the trier of fact at the original bench trial. However, based on the various motions and requests of the parties (see, e.g., Doc. 218), this court has considered the full court and trial record, as well as the various briefs and arguments of counsel, to determine whether judgment may be entered as to damages on the record as it currently exists.

Rule 63 of the Federal Rules of Civil Procedure provides that

> if a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In . . . a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden.

Fed. R. Civ. P. 63.

In Henry A. Knott Co. v. Chesapeake Potomac Telephone Co., 772 F.2d 78 (4th Cir. 1985), the Fourth Circuit Court of Appeals discussed the standard applicable to a successor judge under Rule 63. Although that case involved disability of a master rather than a judge, the Fourth Circuit held that "absent the consent of the parties, a successor master or judge may not be appointed to make findings of fact and conclusions of law based solely upon the transcript developed before the original judge or master,

-5-

unless no credibility determination as to the testimony of the witnesses needs to be made." Id. at 87.

In the present case, Judge William L. Osteen, Sr., conducted the bench trial and entered his Findings of Fact and Conclusions of Law as to liability. However, he retired prior to reaching a decision on the issue of damages. The case was subsequently assigned to the undersigned court. In accordance with Rule 63, this court certifies that it is familiar with the record and believes the case may be completed without prejudice to either party.

Prior to reaching the decision that this case could be completed without prejudice to either party, this court set this case for a hearing on damages. (Doc. 227.) The notice of hearing advised both parties that they could present evidence and argument. Id. As previously noted, Collezione chose not to present any additional evidence. Collezione has had ample opportunity to present evidence and/or object to this court proceeding with a determination of damages on the present record, but has not done so. Accordingly, this court finds that Plaintiff and Collezione have waived the right to present further evidence.

Based upon the evidence presented at trial, the Findings of Fact and Conclusions of Law dated September 14, 2007 and incorporated herein by reference, and the arguments of the

-6-

parties, the court makes the following findings of fact and conclusions of law. This court finds that Defendant is liable to Plaintiff for a total of $11,225,777.18.

### FINDINGS OF FACT

### LANHAM ACT

1. A portion of Collezione's gross revenues from its 20200 collection were generated in violation of the Lanham Act and North Carolina's Unfair and Deceptive Trade Practices Act. Collezione obtained these profits through the unauthorized display of certain pieces of Universal's English Manor collection (as the court found previously in its Findings of Fact and Conclusions of Law, the mirror, dresser, headboards, armoire, marble top night stand, serpentine credenza, large china cabinet, and rectangular and round dining tables) in Collezione's showroom and promotional photographs.

2. The court finds that the amount of gross profit attributable to Collezione's display of Universal's furniture totals $196,921.00. This amount represents the gross profit from the sales of furniture obtained during the time Collezione first displayed the furniture at the High Point Furniture Market in October 2004, until the time Collezione released the redesigned pieces of furniture at the San Francisco Home Furnishings Market on January 26, 2005. This figure includes sales to Rhodes Home Furnishings. While Collezione presented testimony of James

Hendricks in an effort to rebut Plaintiff's evidence as to the Rhodes Home Furnishings orders, that testimony does not establish by a preponderance of the evidence that Rhodes's purchase of furniture was the product of factors other than the Lanham Act violation.

3.  The amount of damages is calculated based on the dates that customers placed their actual orders instead of the dates on which the sales were actually invoiced.  Collezione argued, through the testimony of Paul Frankel, that invoice dates should control the total calculation because, though it received orders for infringing furniture, it did not fill those orders until after the furniture was redesigned.  Paul Frankel's testimony on this point, however, was in large part excluded as hearsay testimony.  (See Trial Tr., May 17, 2007 (Doc. 192) at 57.)  The court finds that Defendant failed to present evidence sufficient to support a finding that the invoice date, as opposed to the date an order was received, should control in this determination of damages.  Accordingly, this court finds that the calculation of damages should be determined using the dates orders were received by Defendant.

4.  The court finds that the sales Collezione made that serve as the foundation for the damages calculation were proximately caused by Collezione's acts that were found to violate the Lanham Act and the North Carolina Unfair and

-8-

Deceptive Trade Practices Act. Collezione has not presented sufficient evidence to rebut a finding that these sales were not the product of Lanham Act violations.

**COPYRIGHT ACT**

5. Collezione received gross revenues from its infringing 20200 collection in the amount of $4,633,621.26 and from its infringing 20000 collection in the amount of $6,592,155.92.

6. Collezione's infringement of Universal's copyrights was willful and was not a result of a misunderstanding or a lack of knowledge by Collezione as to the potential consequences.

7. Collezione presented some evidence of costs by introducing, as exhibits, customer invoices with attachments that included manufacturing, shipping, customs, and various other costs. However, Collezione was, and is, unable to produce a reliable calculation of its costs and gross profits for the infringing items. During discovery, Collezione was asked to produce a deponent pursuant to Rule 30(b)(6) that was able to present a calculation of costs. Plaintiff's Notice of 30(b)(6) Deposition (Pl.'s Trial Ex. 51) requested that Defendant "designate one or more officers, agents, or other persons who are knowledgeable as to the subject areas set forth below . . . ." and identified the requested information as including, but not limited to, the following:

g.    The amount, sources, and method of calculation of Defendant's gross and net profits from the 20000 Collection.

h.    The nature, sources, and methods of calculation of any amounts Defendant intends to claim as deductible expenses or as elements of profit attributable to factors other than the copyrighted work, pursuant to 17 U.S.C. § 504(b), as to the 20000 Collection.

The same requests for information were posed in the Rule 30(b)(6) notice with respect to the Universal Manor and 20200 collections.  Collezione designated Paul Frankel as its agent for purposes of the deposition, yet at that time Mr. Frankel was not able to produce a calculation of Collezione's gross and net profits or deductible expenses.

8.    On July 3, 2008, this court ordered Collezione to submit a revised calculation of deductible costs consistent with that submitted under the Lanham Act evidence.  Collezione's submission did not comply with this court's order.

**CONCLUSIONS OF LAW**

**THE COPYRIGHT ACT**

1.    Under the Copyright Act, the "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).

2.    In this case, Universal seeks to recover Collezione's profits, and not its own actual damages.  "In establishing the

-10-

infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue." Id.

3. Gross revenue is calculated only as to "the gross revenue for the infringer's line of business or project related to the infringement," and not the "infringer's gross revenue from all of its commercial endeavors." Nelson-Salabes, Inc. v. Morningside Dev., 284 F.3d 505, 512 n.9 (4th Cir. 2002) (citation omitted). After the copyright owner submits evidence of the infringer's gross revenue, the burden then shifts to the infringer "to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Under this analysis, "all gross revenue is presumed to be profit 'attributable to the infringement,' unless the infringer is able to demonstrate otherwise." Nelson-Salabes, 284 F.3d at 512 n.9.

4. Universal satisfied its burden of proof under 17 U.S.C. § 504(b) by submitting to the court a calculation of Collezione's gross revenue generated from the sale of infringing furniture. Collezione, on the other hand, failed to establish that any portion of its gross revenues from the 20200 collection, or from the infringing pieces of the 20000 collection, were attributable to any factor other than its infringement of Universal's copyrighted works reflected in the English Manor and Grand Inheritance collections, respectively.

-11-

5.  Accordingly, the court concludes that all of Collezione's gross revenues from the 20000 and 20200 collections, and the profits realized therefrom, are attributable to Collezione's infringement.  The court uses the gross revenue figures (see supra Finding of Fact No. 5) as a starting point in calculating total damages and will deduct any expenses properly deductible and proven by Defendant in accordance with 17 U.S.C. § 504(b).

6.  Collezione bears the burden of proof as to deductible costs.  See Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 520 (4th Cir. 2003) ("Once the copyright owner has established the amount of the infringer's gross revenues, the burden shifts to the infringer to prove either that part or all of those revenues are 'deductible expenses' (i.e., are not profits), or that they are 'attributable to factors other than the copyrighted work.'").  For the reasons set forth below, this court holds that Collezione failed to prove its applicable deductible costs against the gross revenue it obtained through the sale of the infringing 20000 and 20200 lines of furniture. Collezione has presented methods of calculating costs which are confusing, unreliable, and internally inconsistent.

Collezione's inexplicable obfuscation of the deductible costs determination began during discovery.  During discovery, Collezione provided several boxes of sales and cost material,

-12-

purportedly containing its sales invoices and cost invoices.
Thereafter, Plaintiff issued a Notice of 30(b)(6) Deposition,
which requested that Defendant "designate one or more officers,
agents, or other persons who are knowledgeable as to the subject
areas set forth below . . . ." and identified the requested
information including, but not limited to, the following:

> g. The amount, sources, and method of
> calculation of Defendant's gross and net
> profits from the 20000 Collection.

> h. The nature, sources, and methods of
> calculation of any amounts Defendant intends
> to claim as deductible expenses or as elements
> of profit attributable to factors other than
> the copyrighted work, pursuant to 17 U.S.C. §
> 504(b), as to the 20000 Collection.

(Pl.'s Trial Ex. 51 at 2-3.)  The same requests for information
were posed in the Rule 30(b)(6) notice with respect to the
Universal Manor and 20200 collections.  (Id. at 4-5.)

In response to the notice, Defendant designated Paul Frankel
as its Rule 30(b)(6) officer or agent for the deposition.  Mr.
Frankel was asked at his deposition on May 15, 2006, "Is there
any – are there any documents in existence that, or available
that you know of from which, to which you could go and tell us
what the gross profits have been to date on the 20000
collection?"  (Frankel Dep. at 143-44.)  Mr. Frankel answered,
"No."  (Id. at 144.)  Mr. Frankel also answered similarly in
response to a related question about calculating net profits for

-13-

the bedroom and dining room series within both the 20000 and 20200 collections. (Id.) Mr. Frankel testified that neither he, nor anyone else at Collezione, had made such calculations as of the date of the Rule 30(b)(6) deposition. (Id.)

Notwithstanding Mr. Frankel's deposition testimony, at trial Collezione attempted to present evidence of its deductible costs. Collezione introduced its sales and cost supporting documents as Defendant's Exhibits 19-29 through the testimony of Paul Frankel. Mr. Frankel also identified Defendant's Exhibit 30[2] as a summary of net profits for warehouse and direct container sales that he prepared. (Trial Tr., May 17, 2007 (Doc. 192) at 114-15.) Plaintiff subsequently objected to Collezione's cost evidence at trial based on Mr. Frankel's deposition testimony.[3]

It is clear that Collezione's decision to not have its Rule 30(b)(6) representative prepared to testify as to the calculation of gross and net profits, and its decision to only disclose those calculations shortly before trial, precluded Plaintiff from being

---

[2] Defendant's Exhibit 30 did not exist until the Friday before trial started on Monday. (Trial Tr., May 17, 2007 (Doc. 192) at 75.) In view of Mr. Frankel's statement that it would take "hundreds of hours" to perform the calculations (id. at 70), it presumably would have also taken Plaintiff "hundreds of hours" to review said calculations, a task nearly impossible to perform on the weekend before trial. Accordingly, this court finds that disclosure of Defendant's Exhibit 30 was untimely.

[3] Plaintiff's objections at trial to Mr. Frankel's testimony, and the arguments of the parties about the deposition testimony, are found in the May 17, 2007 trial transcripts beginning at page 63.

-14-

able to investigate and weigh the credibility of such evidence. In discussing his deposition responses, Mr. Frankel stated at trial:

> The company – we do not maintain an analysis of profitability either on any single item, gross profits, or on any collection of items . . . . And what I meant, by the way, was, there was no – our system – we do not have it within our capabilities – if you ask me today for something that is not part of this litigation, how much did we make on T-5823, which is a table series, I couldn't tell you if we made a dollar, lost a dollar, or made a million dollars, but I could produce documents where, if you spent hundreds of hours on it, you could determine what we made gross profits and net profit on any series.

(Trial Tr., May 17, 2007 (Doc. 192) at 69-70.)

Mr. Frankel then explained how to calculate gross and net profits with reference to Collezione's invoice documents. Mr. Frankel testified as follows:

> [G]ross profits would be the difference between, and certainly on the warehouse side of things, the cost of the goods and the selling price of the goods. So, that would be gross profit. . . . Now, when we include in the cost of obtaining goods, and we talk about warehouse, you have an invoice from your supplier. . . . Then, on top of the cost of the goods, you also have the cost of the ocean freight, the cost of duty . . . . So, the sum of those numbers, meaning the vendor's cost, freight, duty, brokerage, drayage, would all be additional charges that constitute offsets to – against the selling price, and the result of deducting them would be your gross profit."

-15-

(Id. at 104-05; see also id. at 108.) Although Mr. Frankel's explanation appears fairly straightforward, Collezione's evidence fails to bear out his explanation as to the calculation of costs.

7. As a preliminary matter, this court finds that Defendant's Exhibit 30 is not admissible as a summary exhibit because it is inconsistent with Mr. Frankel's testimony and does not meet the requirements of Rule 1006. Rule 1006 of the Federal Rules of Evidence permits a party to present a summary of voluminous records in the form of a "chart, summary, or calculation." Fed. R. Evid. 1006. A district court has discretion to admit summaries into evidence, provided "that the underlying evidence [is] admissible and available to the opponent so that a proper cross-examination may be had." United States v. Strissel, 920 F.2d 1162, 1164 (4th Cir. 1990). "Charts and summaries are, for instance, inadmissible if they contain information not present in the original or duplicate materials on which they are based. . . . Care must be taken to insure that summaries accurately reflect the contents of the underlying documents . . . ." United States v. Drougas, 748 F.2d 8, 25 (1st Cir. 1984) (internal citations omitted).

Defendant's Exhibit 30 does more than simply summarize the records and calculations described by Mr. Frankel. The majority of the sales calculations (direct sales) contained in Defendant's Exhibit 30 reflect an average sales price, an average unit cost,

-16-

and a total average cost. The "average" calculation is not
described by Mr. Frankel in his testimony and differs from his
description of how costs should be calculated. As a result, it
creates a mistaken impression that a foundation has been laid for
an "average" calculation and the identification of deductible
costs in that manner. Collezione offers no satisfactory
explanation as to why they would describe the costs calculation
in one way and then perform it in another; Collezione simply
failed to provide an adequate foundation for introduction of the
exhibit.

Collezione contended, during trial and in the damages
arguments, that it presented evidence of its costs calculation
during the summary judgment phase of the trial (see generally
Frankel Decl. (Doc. 116); Pl's Trial Ex. 50)[4] that was not
objected to and that supports the final calculation of deductible
costs submitted as Defendant's Exhibit 30. However, a comparison

---

[4] The summary judgment declaration of Paul Frankel was also
introduced at trial as Plaintiff's Exhibit 50. Collezione
referenced the summary judgment costs calculations at trial in
support of its untimely production of Defendant's Exhibit 30
(Trial Tr., May 17, 2007 (Doc. 192) at 67 ("He submitted a
declaration in support of summary judgment that talked about
offsets, that were discussed during his deposition. There is no
surprise . . . .).) Collezione referred to the summary judgment
exhibits again during its argument on damages. (Def.'s
Submission to Assist the Court in Calculating Net Profits for
20000 and 20200 Collections (Doc. 237-1) at 6 ("These
spreadsheets showing net profits per piece for warehouse sales of
the 20000 and 20200 collections were previously provided to
Plaintiff during summary judgment, attached as Exhibit C to a
Declaration of Paul Frankel . . . .").)

of Defendant's Exhibit 30 to the summary judgment calculations
(see Frankel Decl. (Doc. 116); Pl.'s Trial Ex. 50) leads this
court to the conclusion that the summary judgment calculations
only further confuse Collezione's evidence of costs rather than
excuse its initial failure to disclose its calculations when
asked during Mr. Frankel's deposition.

For example, the summary judgment exhibit indicates total
sales of $887,080.00 for direct container sales of the products
designated as "D20200." (Frankel Decl. Ex. A (Doc. 116-4); Pl.'s
Trial Ex. 50 at Ex. A.) Defendant's Exhibit 30 indicates direct
container sales almost ten months later for the D20200 products
of $1,011,180.00. (Def.'s Trial Ex. 30 at C8027.) However, that
figure is adjusted by "DC Units" and "CC Credits" which were not
addressed in the summary judgment calculations. Collezione
alleged that a change in the computer program allowed them to
include voided transactions in the trial exhibits. (Trial Tr.,
May 17, 2007 (Doc. 192) at 125.) That revised transaction was
apparently not produced until after the summary judgment
proceedings. (See id. ("if you look at the exhibits that we just
produced today . . . .").)

Nevertheless, even accepting Collezione's explanation as to
the credits, the calculations are still unreliable and lack an
adequate foundation. The credit adjustments reduce the sales (as
contained in Defendant's Exhibit 30) of the D20200 products to

-18-

$885,170.00, an amount slightly less than the total submitted ten months earlier. The "Total Sales" figure shown on Defendant's Exhibit 30 is further reduced by an "Avg Unit Cost" and "Total Avg Cost" to present a "Gross Profit/Loss" of $107,651.46 in Defendant's Exhibit 30. (See Def.'s Trial Ex. 30 at C8027.) The gross profit previously alleged by Collezione at the time of summary judgment for direct container sales of D20200 products was significantly higher, at $247,256.71. (Frankel Decl. Ex. A (Doc. 116-4).) Collezione's submissions demonstrate its calculation of total sales increased between summary judgment and trial, but its net profit calculation inexplicably decreased.[5] The evidence presented provides no method of resolving this significant conflict or of reviewing the basis or methodology of Collezione's calculations.

Furthermore, Mr. Frankel's trial testimony is surprisingly equivocal in explaining the summary judgment calculations contained in his affidavit. For example, during the examination Mr. Frankel was asked:

> Q. If you will look at the three pages contained under Exhibit B. Actually, it's three, four — ten pages, contained under Exhibit B.

---

[5] An analysis of the sales for the B20200 direct container sales shows similar unexplained variances. Collezione's summary judgment submissions show a gross profit of $421,201.82 for total sales of $1,519,846.68. (Frankel Decl. Ex. A. (Doc. 116-4).) Defendant's Exhibit 30 shows a gross profit of $440,989.32 with total sales of $2,089,740.60. (Def.'s Trial Ex. 30 at C8026.)

-19-

Does that contain a summary of the profits from each invoice for the 20000 and 20200 furniture collections, accurate as of July 21st, 2006?

A. More or less.

(Trial Tr., May 17, 2007 (Doc. 192) at 127-28.) And later, in reference again to his affidavit, Mr. Frankel was asked:

Q. Sure. Does Exhibit C to Plaintiff's Exhibit 50 contain an accurate summary of the profits made by Collezione for each piece of furniture in the 20000 and 20200 collections, accurate as of July 21st, 2006?

**A. Reasonably accurate. I mean, I'm not sure – it wasn't prepared for the purpose of calculating profits we made down to the last penny.**

**We didn't feel it was a damages document that would be used in the event we were found as liable. I think it is generally accurate.**

(Id. at 129 (emphasis added).)

The conflicting nature of Collezione's summaries, as well as its failure to explain the methodology of those calculations and the uncertain nature of its sworn submissions, compels this court to conclude that Collezione's summary judgment submissions further confound the costs evidence submitted by Collezione at trial. Furthermore, as admitted by Mr. Frankel, these calculations were not prepared for a damages determination. This court finds that while Collezione presented some raw invoice documentary evidence related to costs (Def.'s Exs. 19-29), Collezione is unable or unwilling to furnish a reasonably

-20-

reliable method of reviewing and calculating deductible costs from those records.

In an effort to address this issue during the damages phase of this proceeding, this court ordered Collezione to submit a costs calculation summary in a format that would permit Plaintiff, Defendant, and this court to fairly determine and consider Collezione's costs based on the evidence presented at trial. (See Order, July 3, 2008 (Doc. 236).) However, the summary documents pertaining to a calculation of Copyright Act damages that Collezione submitted in response to the court's July 3, 2008 Order are not in the form ordered, are not summary calculations, and ultimately do not present a reliable method of calculating, or even estimating, Defendant's costs.

This court ordered Defendant to submit a summary calculation of its invoices introduced into evidence in a format that itemized each cost by category. (Id.) The order further required Defendant to separate each category of cost. (Id.) Defendant's submission, however, grouped the costs together and utilized the unexplained and unreliable "average cost" calculation.[6] (Def.'s Submission to Assist Calculating Net Profits for 20000 and 20200 Collections Ex. 3 (Doc. 237-4).)

_____

[6] This court also notes that in Collezione's recent reply (Doc. 243), Collezione now argues that "some of the costs can vary widely from shipment to shipment, making an average cost unreliable and questionable." (Doc. 243 at 5.)

-21-

Defendant did not include a total factory cost category like the one Defendant produced for its computation of Lanham Act damages (Def.'s Submission to Assist Calculating Net Profits for 20000 and 20200 Collections Ex. 1 (Doc. 237-2)), or like the one prepared before the trial began (Frankel Decl. Ex. B (Doc. 116-5)). Each of the Lanham Act calculation documents contain separate categories for invoice price, manufacturing cost, freight, duty, and commission. The same is not true for the Copyright Act damages calculation.[7]

The court finds that Collezione's calculations do not properly respond to this court's order. (See Order, July 3, 2008 (Doc. 236).) Because Collezione's submission is inconsistent with Mr. Frankel's testimony and with this court's order, the calculations as submitted are insufficient and, accordingly, are rejected.

In addition to the issues previously identified, this court's concern over the cost calculations is further illustrated by a review of the average costs calculations submitted for warehouse, or "Re" sales.[8] (See Def.'s Submission to Assist Calculating Net Profits for 20000 and 20200 Collections Ex. 2

---

[7] Subsequently, this court specifically advised Collezione of its concern over the admissibility of Defendant's Exhibit 30 and ordered Collezione again to submit a costs calculation, yet Collezione did not comply. (See Text Order, Jan. 7, 2009; Responses (Docs. 241-42).)

[8] See also discussion of discrepancies as to direct container sales, supra.

-22-

(Doc. 237-3).)  The average "landed cost per unit," as calculated

for warehouse sales as contained in Defendant's Submission to

Assist the Court in Calculating Net Profits for 20000 and 20200

Collections Exhibit 2, is apparently based upon sales that

occurred during a period of time prior to summary judgment.  (See

Def.'s Submission to Assist the Court in Calculating Net Profits

for 20000 and 20200 Collections (Doc. 237-1) at 6 (alleging,

without a citation to evidence of record, the manner in which

summary judgment exhibit calculations were used to calculate an

average cost in preparing Defendant's Second Spreadsheet (Doc.

237-3)); see also Frankel Decl. Ex. C (Doc. 116-6) (prepared at

the summary judgment stage and showing the quantity of each piece

sold).)  However, there is a large discrepancy between the

quantities reported as sold before the summary judgment phase

(and purportedly used to calculate the "average" cost figure),

and the quantities reported as sold during trial and the damages

phase.  (Compare Frankel Decl. Ex. C (Doc. 116-6), "History of Re

Orders", with Def.'s Submission to Assist the Court in

Calculating Net Profits for 20000 and 20200 Collections Ex. 2

(Doc. 237-3) at 7, "Summary of Profit Per Piece for Warehouse

Sales".)

Specifically, the warehouse ("Re") orders for the 20000

Collection, as described in the summary judgment affidavit

(Frankel Decl. Ex. C (Doc. 116-6)), indicate that a total of

-23-

3,429[9] infringing units were sold. However, the summary of profit per piece chart indicates a total of 6,929 units sold. (See Def.'s Submission to Assist the Court in Calculating Net Profits for 20000 and 20200 Collections Ex. 2 (Doc. 237-3) at 7), an increase of more than one hundred percent between summary judgment and the final evidence presented at trial.[10] Apparently, a large part of the sales of these goods occurred after the affidavit in support of the motion for summary judgment was filed; however, no reasonably reliable expense compilation was presented for review for those sales. Collezione's apparent underlying assumption, that is, that expenses had to remain constant, is not supported by any evidence whatsoever. Furthermore, the methodology used assumes that the original calculation is accurate, yet Collezione has never adequately explained its original calculations. To the contrary, Mr. Frankel's statements are that the calculations were at best "more

---

[9] This figure does not include item numbers 20000-100S, 20000-100A, 20000-4476B and 20000-4476T, which were earlier found by this court as non-infringing.

[10] The discrepancy, although not as stark as for the 20000 Collection, is also evident in the calculations for the warehouse sales of the 20200 Collection. There, the quantity apparently used for the average cost calculation was 7,398 pieces. (See Frankel Decl. Ex. C (Doc. 116-6), "History of Re Orders"; Def.'s Submission to Assist the Court in Calculating Net Profits for 20000 and 20200 Collections Ex. 2 (Doc. 237-3) at 3, 5.) The quantity reported as sold during trial and in the damages phase was 10,017 pieces. (See Def.'s Submission to Assist the Court in Calculating Net Profits for 20000 and 20200 Collections Ex. 2 (Doc. 237-3) at 6.)

-24-

or less" accurate or they weren't "prepared for the purpose of calculating profits we made down to the last penny." (Trial Tr., May 17, 2007 (Doc. 192) at 129.)

8.   Due to the willful nature of Collezione's infringement, this court closely scrutinizes Collezione's evidence of alleged deductible expenses. See Hamil Am., Inc. v. GFI, Inc. 193 F.3d 92, 106-07 (2d Cir. 1999), cert. denied, 528 U.S. 1160 (2000) ("When infringement is found to be willful, the district court should give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product."). Collezione's evidence falls short of meeting the burden of proof as to deductible expenses set forth under 17 U.S.C. § 504(b) because Collezione failed to establish a "'sufficient nexus between each expense claimed and the sales of the unlawful goods.'" See id. at 107 (quoting Manhattan Indus. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 8 (2d Cir. 1989)).

9.   Although imprecision in the computation of expenses "is not a ground for denying apportionment altogether," Gaste v. Kaiserman, 863 F.2d 1061, 1070-71 (2nd Cir. 1988), and approximations may constitute satisfactory evidence, any doubts resulting from an infringer's failure to present adequate proof of its costs are resolved in favor of the copyright holder. In Design v. K-Mart Apparel Corp., 13 F.3d 559, 564 (2nd Cir. 1994)

-25-

(citing Gaste, 863 F.2d at 1070-71), overruled on other grounds by Clark v. Hudson Bay Music, Inc., 104 F.3d 351 (2d Cir. 1996).

In summary, this court finds as follows:

a. Defendant failed to prepare its witness to provide the requested cost calculations during discovery as required by the Rule 30(b)(6) deposition. Defendant's failure to provide its costs during discovery, or to supplement its lack of a response in a timely fashion, supports Plaintiff's motion that Defendant's evidence of deductible costs be stricken and Plaintiff's objection to Defendant's Exhibit 30 be sustained. See United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996) (noting that "[p]roducing an unprepared witness [for the deposition of a corporation] is tantamount to failure to appear," warranting imposition of sanctions (citing Fed. R. Civ. P. 37(2))).

This court would ordinarily decline to impose such sanctions in the absence of further action by Plaintiff such as the filing of a motion to compel and the issuance of a discovery order. See Fed. R. Civ. P. 37(a)(3)(B)(I), 37(a)(5)(A) and 37(b)(2)(A). However, as discussed herein, this court ordered Collezione to submit a total cost calculation during the damages phase of this proceeding. Collezione could not, or would not, submit such a calculation and, as a result, failed to comply with this court's order. Collezione's refusal to present evidence at the damages hearing (see Docs. 227, 229, Hr'g. Tr., June 4, 2008), and its

-26-

failure to comply with this court's order leads this court to the conclusion that Plaintiff's motion should be granted. Accordingly, this court strikes Defendant's testimony as to its costs and Collezione's cost calculations are disallowed.

b. In the alternative, this court finds that Collezione has failed to carry its burden of proof by failing to present evidence with any probative force. Because of the substantial conflict within Defendant's evidence and Defendant's failure to provide the reasonably dependable calculation required by this court's order, the court finds that Defendant failed to prove its deductible expenses by a preponderance of the evidence as required by 17 U.S.C. § 504(b). Though this court allowed into evidence Collezione's invoices, Collezione failed to describe with any accuracy or reliability which costs should be apportioned to the infringing furniture, which costs should be reflected in a final profit calculation, and a reliable manner of calculating, or even estimating, those costs. See Hamil, 193 F.3d at 104-09 (stating that "[e]very infringer shoulders the burden of demonstrating a sufficient nexus between each expense claimed and the sales of unlawful goods . . . before it may deduct any overhead expenses from its profits." (internal citations and quotations omitted)).

At a minimum, the "burden of proof" concept means that the movant must provide the court with a reasonable basis from which

-27-

the court can interpret the movant's evidence. See <u>Dir., Office of Workers's Comp. Programs v. Greenwich Collieries</u>, 512 U.S. 267, 275 (1994) ("The burden of proof is the obligation which rests on one of the parties to an action to <u>persuade</u> the trier of the facts . . . of the truth of a proposition which he affirmatively assert[s] . . . ." (quotation marks and citation omitted)(emphasis added)). Here, Collezione's deductible cost evidence is wholly unreliable and confusing. The evidence is completely lacking in probative force, as demonstrated by (1) Collezione's refusal, in contravention of multiple court orders, to apply its cost methodology to the invoices submitted to the court, (2) Paul Frankel's equivocal testimony, and (3) Collezione's inability to reconcile its summary judgment costs exhibit with Defendant's Exhibit 30. Since Collezione has not provided a reasonably reliable method from which the court could calculate, or even estimate, its deductible costs, the court finds that Collezione has failed to meet its burden of proof. At law, a party cannot meet its burden of proof with mere allegations of what it should receive; it must prove its entitlement. <u>Goldberg v. B. Green & Co., Inc.</u>, 836 F.2d 845, 848 (4th Cir. 1988) ("To meet his burden under ordinary principles of proof, Goldberg must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact.")

-28-

10.    Under such circumstances, the court may award a copyright owner all of the infringer's "gross revenue from the sale of the infringing [items]." <u>Williams v. Arndt</u>, 626 F. Supp. 571, 582 (D. Mass. 1985).

11.    Collezione's gross revenues from sales of the infringing 20200 Collection (bedroom and dining room series) total <u>$4,633,621.26</u>.

12.    Collezione's gross revenues from sales of the infringing pieces of the 20000 Collection (bedroom and dining room series) total <u>$6,592,155.92</u>.

13.    The court concludes that, under § 504(b) of the Copyright Act, Universal is entitled to recover from Collezione the sum of <u>$11,225,777.18</u> in damages and disgorgement of Collezione's profits.

**THE LANHAM ACT**

14.    Under the Lanham Act, a plaintiff is entitled to recover, subject to the principles of equity, the defendant's profits resulting from, <u>inter alia</u>, false designations of origin in violation of Section 43(a) of the Lanham Act.  15 U.S.C. §§ 1117(a), 1125(a).  In proving damages under the Lanham Act, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  Thus, the court considers the defendant's

-29-

sales to be profit unless a defendant can prove "all elements of cost or deduction claimed." Id.

15.    In the Fourth Circuit, the following equitable factors are appropriate for a district court to consider when assessing a disgorgement of a defendant's profits under the Lanham Act: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales were diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. See Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174-75 (4th Cir. 2006) (noting the equitable factors used by the Third and Fifth Circuits in determining damages awards under the Lanham Act).

16.    All six of the Synergistic factors favor a disgorgement of Collezione's profits.

17.    In this case, Collezione displayed actual pieces of Universal's English Manor furniture in its showroom and promotional materials with an intent to confuse or deceive prospective purchasers into believing that such furniture was available for purchase from Collezione. This conduct diverted sales from Universal to Collezione.

18.    Injunctive relief is insufficient to compensate Universal and remedy Collezione's unjust enrichment because Collezione "deprived [Universal] of the opportunity to earn sales

-30-

and profits," by displaying the English Manor furniture.
(Findings of Fact and Conclusions of Law (Doc. 203) at 37-38.)
Additionally, Collezione's promotional materials that portrayed
Universal's furniture "were used to generate furniture sales that
benefitted [Collezione] and not [Universal]." (Id.) This caused
Universal actual harm.

19. Universal did not delay in asserting its rights, as it
investigated the matter promptly by attempting to reconcile the
matter with Collezione, and then filed suit after that process
did not yield a satisfactory result.

20. This court has already found that the public interest
weighs strongly in favor of making Collezione's conduct
unprofitable. (Mem. Op. (Doc. 213) at 8-9.)

21. This is also a case in which Collezione has been found
to have engaged in "reverse passing off." (Findings of Fact and
Conclusions of Law (Doc. 203) at 38-39.)

22. Universal initially submitted a figure for damages
under the Lanham Act that included not only all sales of the
aforementioned pieces made by Defendant during the time period
between October 2004 (when Collezione displayed the pieces of
English Manor furniture at the High Point Furniture Market and in
promotional photographs) and January 26, 2005 (when Collezione
displayed its "redesigned" 20200 collection at the San Francisco
Home Furnishings Market), but also sales subsequent to those

-31-

dates placed by repeat customers. The court could not distinguish how Plaintiff was able to calculate such damages based on a figure derived from when a customer first purchased the furniture.

23. Defendant's calculation of Lanham Act damages ("First Spreadsheet") contained in Exhibit 1 of its damages submission (Def.'s Submission to Assist Calculating Net Profits for 20000 and 20200 Collections Ex. 1 (Doc. 237-2)) details, among other categories, the order dates, invoice price, manufacturing costs, and shipping fees of all the sales of the subject furniture from October 2004 until January 26, 2005. The court concludes that this time period is the appropriate one for assessing profits under the Lanham Act in this case. Defendant's net sales from this time period total $624,555.00.

24. For the reasons discussed above in connection with proving deductible expenses under the Copyright Act, the court concludes that Collezione failed to meet its burden under the Lanham Act of proving each element of cost and deduction claimed from the established sales. The court therefore finds that only Collezione's manufacturing costs are deductible.

25. Except for the reasons set forth in paragraph twenty-seven (27) hereinafter, Universal is entitled to recover from Collezione the net profits received by Collezione as a result of Collezione's violations of the Lanham Act, $196,921.00.

-32-

26. Universal acknowledged, and this court finds, overlap in the amounts recoverable under the Copyright Act, on the one hand, and the Lanham Act on the other hand. Furthermore, because this court is awarding gross revenues from sales of the pieces from the 20200 and the 20000 collections that the court previously found infringing, the court will exercise its discretion to adjust the Lanham Act award. The court finds that recovery based on profits under the Lanham Act is excessive in view of the other circumstances of this case, and declines to award damages to Plaintiff under the Lanham Act. See 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

**THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

27. If a plaintiff proves a violation of the Lanham Act, then pursuant to North Carolina General Statutes section 75-1.1, a district court may treble any profits awarded as damages under the Lanham Act. See Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987) (summarily trebling infringer's profits and rejecting argument that only damages suffered by the plaintiff may be trebled).

28. The court notes that it declined to award Universal any damages under the Lanham Act. Further, court hereby finds that

-33-

Universal's damages under North Carolina General Statutes section 75-1.1 et seq. are the same damages Universal would otherwise be entitled to recover under the Lanham Act. Because the court, in its equitable discretion, declined to award damages under Plaintiff's Lanham Act claim, the court also declines to award damages under North Carolina General Statues section 75-1.1 et seq. See Essex Group, Inc. v. Express Wire Serv., Inc., No. COA04-613, 2005 WL 589875, at *2 (N.C. Ct. App. Mar. 15, 2005) (noting that courts have considerable discretion in awarding damages where the defendant has engaged in unfair or deceptive trade practices and stating that "the measure of damages [under N.C. Gen. Stat. section 75] should further the purpose of awarding damages, which is to restore the victim to his original condition." (internal quotation marks and citations omitted)).

**TOTAL AWARD AMOUNT**

29. Because Universal is being awarded Collezione's gross revenues, this court in exercising its discretionary authority will not award prejudgment interest. See Kleier Adver., Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1040 (10th Cir. 1990) ("The decision whether or not to allow prejudgment interest rests within the sound discretion of the trial court." (internal citations and quotations omitted)). Likewise, this court will direct each party to pay its own costs and attorneys' fees. See 15 U.S.C. § 1117(a) ("If the court shall find that the amount of

-34-

the recovery based on profits is either inadequate or excessive
the court may in its discretion enter judgment for such sum as
the court shall find to be just, according to the circumstances
of the case."); 17 U.S.C § 505 ("[T]he court in its discretion
may allow the recovery of full costs by or against any party
. . . , the court may also award a reasonable attorney's fee to
the prevailing party as part of the costs."). In light of the
size and nature of the award to Universal, this court does not
find that this is an "exceptional case" which would merit
awarding attorneys' fees to the prevailing party. 17 U.S.C. §
505; 15 U.S.C. § 1117(a).

**IT IS THEREFORE ORDERED:**

1. For the reasons set forth herein, it is hereby **ORDERED**
that Defendant's Exhibit 30 and Defendant's evidence of
deductible costs of the items infringing the Copyright Act is
hereby **STRICKEN** for failure to comply with the Federal Rules of
Civil Procedure, and further, for failing to comply with this
court's orders.

2. A judgment, consistent with this court's opinion in
favor of Universal and against Collezione in the amount of
$11,225,777.18 shall be entered contemporaneously herewith.

3. Upon entry of the Judgment, it is further ordered that
this action is **DISMISSED** with prejudice.

This the _12th_ day of February 2009.


William L. Osteen. Jr.
United States District Judge